OVERTON, J.
 

 This suit was instituted to recover judgment on a draft and a negotiable bill of lading against the Teche Canning & Syrup Co., Inc., hereinafter referred to as the canning company, and S. O. Nuckolls, in solido, for the sum of $5,312.05 with legal interest thereon from January 3, 1919.
 

 The suit is based on allegations showing that Nuckolls represented to plaintiff that he was the agent of the canning company and had sold to H. H. Watson of Longview, Tex., for the account of his principal, a carload of pure Louisiana cane .syrup, consisting of 970 eases, for the price and sum of $5.85 per case, or a total price of $5,312.05; that Nuckolls, upon making these representations, requested plaintiff to advance the purchase price of the syrup pending the delivery thereof to the purchaser; that on or about January 3, 1919, pursuant to the foregoing request, plaintiff paid to Nuckolls the sum bf $5,312.05, all of which he immediately paid to the canning company except the sum of about $500, which he retained as his commission; that, at the time said payment was made, Nuckolls delivered to plaintiff a draft for the aforesaid sum, payable on arrival of the car of syrup, to plaintiff’s order, and delivered to plaintiff a negotiable bill of lading, dated January 3, 1919, reciting that the railway company had received at Enterprise, La., from the canning company, 970
 
 *949
 
 eases of cane syrup, consigned to the order of S. O. Nuckolls, Longview, Tex.; that in due course the syrup was transported by rail to Longview; that, when the syrup arrived at its destination, it was in a state of fermentation, was not salable, and could not be made into a salable product without being reprocessed; that Watson refused to pay the draft on the ground that the syrup was not merchantable^that plaintiff immediately reported the condition of the syrup, and the fact that Watson refused to pay the draft, to Nuckolls and to the canning company, and called upon them to take steps immediately to prevent the absolute loss of the syrup, and to repay it the amount advanced, but that Nuckolls and the canning company refused to comply with said demand; that there was no refinery or other place at Longview, Tex., at which the syrup could be reprocessed, and none nearer than the refinery of the canning company; that, under the Uniform Bill of Lading Act of this state (Act No. 94 of 1912), and under the Bill of Lading Act of the United States (U. S. Gomp. St. §§ 8604aaa-S604w), one who transfers or negotiates for value a bill of lading by indorsement or delivery, including one who assigns for value a claim secured by a bill, warrants that the goods are merchantable or fit for a particular purpose; that plaintiff advanced the aforesaid sum,of money on the faith of the representations of the canning company and of its agent Nuckolls, and of the warranty implied by law that the goods were merchantable. ' The petition concludes with a prayer for judgment against Nuckolls and the canning company in solido for the aforesaid sum of $5,312.05, with legal interest as stated above.
 

 Against the foregoing demand, Nuckolls filed an exception of no cause of action, based upon the theory that, as plaintiff alleged that he (Nuckolls) was acting, in con-, ducting said transaction, as the agent of the ■canning company, the transaction was not his, and therefore that he is not liable under the allegations of fact contained in the petition. The trial court sustained this exception. No appeal was taken from the judgment sustaining it. In fact, the case as against Nuckolls has been abandoned; hence the suit, at present, is one only against the canning company.
 

 The canning company also appeared and - filed an exception of no cause of action. The theory upon which the exception filed by it is based is that the suit is one upon a draft only; that the draft upon which the suit is based is a foreign bill; that no allegation is made that the bill was protested for nonpayment; and that, in the absence of such an allegation, the petition discloses no cause of action.
 

 In our view, the suit is not merely upon a draft, but is also upon the bill of lading delivered by 'Nuckolls to the bank. When plaintiff cashed the draft with the bill of lading attached, it becam'e, to all intents and purposes, the owner of the bill and of the merchandise which it represented. First National Bank v. Henderson Cotton Co., 157 La. 394, 102 So. 501; Aleman Planting & Mfg. Co. v. Hines, 157 La. 625, 102 So. 815. Such being the case, plaintiff, as holder of th'e bill of lading, has the right to sue the canning company, which signed it as shipper, under that company’s warranty that the merchandise represented by the bill was merchantable and fit for the purpose for which it was manufactured. In order for plaintiff to sue the canning company on the bill of lading, under its warranty, it is immaterial whether it appears that the draft was protested or not. In so far as the canning company is'concerned, the allegations in plaintiff’s petition concerning the draft may be considered as merely serving to show how and under what circumstances plaintiff acquired the bill of lading. As plaintiff has the right to sue on the bill of lading with
 
 *951
 
 out reference to the draft, our conclusion is that the exception was properly overruled.
 

 After the exception was overruled, the canning company filed its answer, and the case was tried. The evidence adduced on the trial shows that Nuckolls, after having effected a sale of 970 eases of pure Louisanacane syrup to Watson at. ¡¡iS.85 a case, purchased the syrup from the canning company at $5 a' ease; that Nuckolls saw plaintiff for the purpose of making arrangements, with it to cash a draft, with bill of lading attached, which he intended drawing on Watson for the purchase price of the syrup;. that the bank agreed to cash the draft, but exacted as a condition that a bank in Longview guarantee that Watson would pay it. The evidence further shows that the bank at Longview, after a delay óf a .few days, agreed to guarantee 'the payment of the draft, with the bill of lading attached; that in the meantime the car was loaded, and on January 3, .1919, Nuckolls drew the draft on Wats'on, and on the same day plaintiff, at the instance of Nuckolls, cashed the draft, placed' the proceeds thereof to his credit, paid the canning company the purchase price he agreed to pay it, and obtained a bill of lading to his order for the merchandise, signed by the agent of the railway company and by the canning company, as shipper, through A. H. Olivier, an .official thereof, indorsed the bill of lading in blank, and delivered it to plaintiff to be attached to the draft. The evidence also shows that, when the ear-, containing the syrup, reached Longview, some 24 days after the bill of lading was issued, a good part of the syrup, about one-fourth thereof, was in a state of fermentation; that some of the cans, containing/the syrup, had bursted, due to fermentation, and that syrup, as a consequence, was running over the floor of the car. The evidence further, shows that some 20 or 30 days thereafter the syrup was examined by the United States government, and, under proceedings instituted under the Pure Food Laws (U. S. Comp. St. §§ 8717-8728), the syrup was seized by the marshal and later was condemned by the United States District Court as unfit for food, unless reprocessed, and was ordered sold. The evidence also shows that fermentation continued to take place after the syrup was removed by the marshal from the car, and that, at the sale that took place, it brought only a trifle, scarcely sufficient, if sufficient, to pay the costs of the condemnation proceedings. The evidence further shows that, when the syrup arrived at Longview, Watson refused to pay the draft on the ground that ‘the syrup was in a state of ferment'átion, and that the bank, which had guaranteed the payment of the draft, did likewise. The evidence further shows that, so soon as plaintiff received notice of the refusal to pay the draft on account of the condition of the syrup, it notified Nuckolls and the canning company, and called upon the latter to minimize the loss by having the syrup shipped back to reprocess it, and even offered to pay a part of the freight for that' purpose, but the canning company refused to take any steps in the matter.
 

 It is a matter of vital importance whether the syrup was properly prepared and canned. Plaintiff contends that it was not, and hence that fermentation occurred. The canning company contends that the syrup was properly prepared and canned, and that fermentation was brought about by the manner in which the syrup was handled and the condition of the weather after it was delivered free on board of the ear at the company’s factory.
 

 The evidence shows that the syrup was loaded on a ear having the necessary ventilation, approximately 10 or 15 days before the bill of lading was signed; that it was prop
 
 *953
 
 erly loaded; that pure cane syrup has a tendency to ferment in warm weather; that this tendency is increased when the syrup is agitated; that the car on which the syrup was loaded left the canning company’s factory at Enterprise, La., over the New «Iberia Northern Railroad, on January 4, 1919, the day after the hill of lading was signed, and reached Port Barre, 59 miles distant from Enterprise, the following day, after remaining at New Iberia all night, from which point it resumed its course over the Gulf Coast Lines; that the track of the New Iberia & Northern Railroad is comparatively rough, though the road is in condition, and was so at the time the car containing the syrup was hauled over it, for the successful operation of trains; that the car reached Longview on January 27, 1919, 24 days after the bill of lading was signed; that, from the time the car was loaded until it reached its destination, the average temperature was below 55 degrees above zero, Fahrenheit, and the average maximum temperature below 60 degrees; that during this period the highest temperature was 70 degrees Fahrenheit and was so on three days only, and these days were separated from one another by days showing a lower maximum temperature.
 

 It is a matter of common knowledge that properly prepared cane syrup is continually shipped over railroads without being spoiled. If it could not be so shipped it is manifest that it would have but little commercial value. In our view, the fact that the syrup fermented was not due to the con- " dition of the railroads over which if was hauled, nor to the manner in which it was handled in transportation; nor do we think that the fermentation was due to the condition of the weather. While the temperature, stated above, was' the temperature of the weather during the period of shipment and before shipment, while the car was loaded, only at the point from which the shipment was made, yet it is reasonable to infer that the temperature did not exceed; or appreciably exceed, that given at any point along the route; the conditions being not materially different. Had the syrup been properly prepared and canned, it should not have fermented under the conditions shown by the record. In our opinion the fermentation was due to the fact that the syrup was not properly prepared and canned.
 

 When the canning company sold to Nuckolls, it impliedly warranted, in the absence of anything to the contrary, and there is nothing to the contrary, that the syrup, which was intended to be put upon the market as an article of food, was properly prepared and canned, for, if it was not properly prepared 'and canned, it would fail to serve its purpose.
 

 The shipment was an interstate .shipment, and was therefore governed by the acts of Congress. Section 34 of the Act of Congress of date August 29, 1916, e. 415, 39 Stat. L. 538 (Fed. Stat. Ann., 1918 Supp. p. 73 [U. S. Comp. St. § 8604qq]), provides, among other things:
 

 “That a person who negotiates of transfers for value a bill by indorsement or delivery, unless a contrary intention appears, warrants— *******
 

 “(d) That he has a right to transfer the title to the goods, and that the goods are merchantable or fit for a particular purpose whenever such warranties .would have been implied if the contract of the parties had been to transfer without a bill the' goods represented thereby.”
 

 In our opinion, not only did Nuckolls, by transferring the negotiable bill of lading herein to plaintiff, by indorsement and delivery, warrant that the syrup was properly prepared and canned, so as to be merchantable, but the effect of the transfer was also to convey to plaintiff his rights of warranty
 
 *955
 
 against the canning company, and hence to convey his right to sue that company.
 

 We have considered the canning company’s contention that plaintiff did not do what it should have done to minimize the damage. In our opinion this contention is not well founded. Plaintiff did all that it could be expected reasonably to do in that respect. The canning company itself refused to do anything in that direction. We have also considered the canning company’s contention that plaintiff should have sued Watson, to whom Nuckolls sold the syrup, and the bank that guaranteed the payment of the draft on Watson. However, it is sufficient to say that plaintiff was not called upon to do a vain thing. As the syrup was not merchantable, plaintiff could not have recovered against either.
 

 For the foregoing reasons our conclusion is that plaintiff is entitled to recover against the canning company, though not the full amount for which it sues, but the amount which Nuckolls might have recovered had he not negotiated the bill of lading, which, in this instance, is the value of the goods, at the time and place the warranty arose in favor of Nuckolls; that is, when he made the purchase from the canning company. See Peterkin v. Martin, 30 La. Ann. 894. That value, as appears from the price paid by Nuckolls for the syrup, is $4,850.
 

 For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from, which is in favor of said Teche Canning & Syrup Company, Inc., be annulled and set aside, and that there now be judgment in favor of plaintiff and against said Teche Canning & Syrup, Company, Inc., for said sum of $4,850, with legal interest thereon from January 3, 1919; said Teche Canning & Syrup Company, Inc., to pay the costs of this appeal, and the costs of this suit, as against it, in the lower court.