WALTER AND WALZER v. HIBERNIA BANK AND TRUST COMPANY

(April 12, 1926, Opinion and Decree)

*(Syllabus by the Court.)*

1. Louisiana Digest—Banks and Banking —Par. 59; Pledges—Par. 33.

A bank in transferring a warehouse receipt which it holds as pledgee, to a third person with the consent of the pledgor does not thereby warrant the genuineness of such receipt or the quantity or quality of the goods therein described.

Appeal from Civil District Court, Division "C", Hon. E. K. Skinner, Judge.

Action by Walter and Walzer against Hibernia Bank and Trust Company. There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Dart, Kernan and Dart, of New Orleans, attorneys for plaintiff, appellant.

McCloskey and Benedict, Michael M. Irwin, of New Orleans, attorneys for defendant, appellee.

WESTERFIELD, J. Plaintiff sues the Hibernia Bank and Trust Company, hereinafter referred to as the bank, for $523.93, the alleged purchase price of a certain warehouse receipt plus $30.00, the expense alleged to have been incurred in an endeavor to get possession of the merchandise named in the warehouse receipt.

From a judgment in defendant's favor dismissing the suit plaintiff has appealed.

The record presents the following facts:

The McPhonso Oil Refining Company to secure a loan it had obtained from the defendant bank pledged to the bank a warehouse receipt issued under date of October 13, 1921, by the Louisiana Oil Warehousing Company calling for 14,-371.56 gallons of kerosene. Susequently with the consent of the bank 400 gallons were withdrawn and that fact properly noted on the receipt. Thereafter, in April, 1922, Mr. E. W. Walter, a member of the plaintiff firm purchased from the McPhonso Oil Company the kerosene represented by the warehouse receipt and by agreement with the bank the money was paid to the bank and the receipt delivered

to plaintiff. Thereupon plaintiff sent several tank cars to the Louisiana Oil Warehousing Company for the purpose of getting the oil, but, discovered that there was no oil in the warehouse covered by the receipt.

The bank relies upon Sec. 46 of the Uniform Warehouse Receipt Act (No. 221 of 1908). This section reads as follows:

"A mortgagee, pledgee, or holder for security of a receipt who in good faith demands or receives payment of the debt for which such receipt is security, whether from a party to a draft drawn for such debt or from any other person, shall not by so doing be deemed to represent or to warrant the genuineness of such receipt or the quantity or quality of the goods therein described."

Plaintiff contends that it bought the warehouse receipt from the bank and urges the application of the general law of implied warranty in all sales. A letter written by the bank under date of April 6, 1922, is pointed to as evidence of the alleged sale by the bank. This letter reads as follows:

"April 6th, 1922.
"Messrs. Walter & Walzer,
"City.
"Dear Sirs:

"This is to acknowledge receipt of $523.93, in payment of Louisiana Oil Warehousing Company receipt Number 129, for 14,371.56 gallons of kerosene, which has been reduced by a release of four hundred (400) gallons, on April 3rd, to 13,971.56 gallons, and stored in tank number 14.
    "Yours very truly,
        "(Sgd) L. P. BANCHET,
"LPB:CS            Assistant Cashier."

It is further contended that the bank did not "demand payment of the note or receive payment of the debt from the plaintiff", and that it did not immediately apply the money received from plaintiff to the loan. It is admitted however that the money was eventually so applied. "Doubtless the proceeds of this payment did eventually apply against the note because the ledger sheet of the account shows that on April 26, 1922, after accumulating in the account (McPhonso Oil Refining Company account) a sum in excess of $900.00, the account was closed out and the balance applied to the note." Counsel also says that if the bank was the pledgee of the receipt it should have told Walter at the time it delivered the receipt to him.

Our views are in accord with those of the trial judge as expressed in his reasons for judgment and we think with him that the case is controlled by Sec. 46 of the Uniform Warehouse Receipts Act and is with defendant.

One who obtains a warehouse receipt from a bank knows or in any event is presumed to know that the bank is in the business of lending money and not that of buying and selling merchandise. Consequently, there is no necessity of informing such person that the bank holds the warehouse receipt as a pledge securing a loan, and in the absence of any special warranty or of fraud actual or constructive the bank can not be held to guarantee anything. The plaintiff in this case lost his money which he paid to the bank but the loss was in no sense due to the bank. The fact that the bank might have lost to the extent that its security was depreciated or worthless if plaintiff had not taken it over is not material. In the first place it does not appear that the McPhonso Oil Company was insolvent or unable to replace worthless collateral with other

and better security. Nor is it anywhere shown that the disappearance of the kerosene was due to the fault or fraud of the McPhonso Oil Company. But in any case the law absolves the pledgee, from responsibility for "the genuineness of such receipt or the quantity or quality of the goods therein described". The fact that the assistant cashier of the defendant bank called the transaction in his letter a sale, does not add to the bank's responsibility. Moreover the evidence shows that plaintiff bought from the McPhonso Oil Company with whom all negotiations leading to the agreement of sale were had. Nor can the fact that the money was first credited to the account of the bank's debtor affect the situation. The note which is in evidence stipulates that all credits due the maker from any source was subject to immediate application by the bank to the payment of any indebtedness due the bank in the event of default in payment or decline in the value of securities pledged and a few days later this money and other credits were seized by the bank and applied to the payment of the loan. Plaintiff was in no way prejudiced by this transaction and we see no merit in the contention that the money should have been immediately applied to the loan.

The case of New Iberia National Bank vs. Teche Canning and Syrup Company, 159 La. 946, 106 S. 451, we do not think in point.

For the reasons assigned the judgment appealed from is affirmed.