No. 841

First Circuit

CONSOLIDATED FLOUR MILLS CO. v. DiMARCO

(October 7, 1931. Opinion and Decree.)
(December 8, 1931. Rehearing Refused.)

Leon Ford, Jr., of Hammond, attorney for plaintiff, appellee.

Rownd & Warner, of Hammond, attorneys for defendant, appellant.

ELLIOTT, J. Consolidated Flour Mills Company claims of Joe DiMarco $742.75 on account of an alleged breach of contract on part of defendant in buying from plaintiff two carloads of flour of the Lucky Leven brand.

The defendant refused to take the flour, claiming that it was not fit for making bread, stating in a telegram bearing date March 19, 1930: "Flour not as represented, unable to dispose of same to trade. Will refuse to accept any additional flour."

In a reply telegram dated March 20, 1930, plaintiff states that Lucky Leven flour was up to standard in every way. The telegram makes a number of other statements, among them that no warranty was made of Lucky Leven flour; that Lucky Leven was not the first grade of flour and not guaranteed to be uniform or satisfactory.

The defense may be summed up in the answer, averment No. 14, in which defend-ant admits agreeing to buy 420 barrels of flour from plaintiff, alleging that it was presumed that the flour would be of the quality sufficient for ordinary household use, but the claim is made that after receiving a shipment of 210 barrels, he found that a great portion of the flour was of such inferior quality that it could not be used for bread making. The shipment referred to in the answer was a shipment made previous to the one refused. Defendant alleges loss in trade due to the inferior quality of the flour received by the previous shipment to the extent of $3,150, which he claims in reconvention.

The lower court rendered judgment in favor of the plaintiff as prayed for and rejected defendant's demand in reconvention. Defendant has appealed. Defendant contends in his brief that the judgment against him for $742.75 should be reversed, but there is no argument in support of his demand in reconvention, which we therefore look on as abandoned.

The suit is based on a written contract containing a number of stipulations bearing date August 21, 1929, but shipment was not to be made until March 1, 1930. The shipment was made in interstate commerce.

The evidence shows that the flour was intended for bread making for family use and must therefore have been fit for human consumption, the purpose for which it was bought by the plaintiff and sold by the defendant, unless fitness for such a purpose was waived.

The written contract contains no waiver of warranty in that respect, consequently the sale was subject to implied warranty that the flour was fit for household use and for making bread for human con-

sumption. See New Iberia National Bank v. Teche Canning & Syrup Co., 159 La. 946, 106 So. 451. The preponderance and the more reliable and convincing evidence is that the flour in question was a fairly good brand, good enough for the purpose for which it was bought and sold and which the parties had in mind.

Wiley T. Hawkins, sales manager for plaintiff, testified that it came up to the required standard in the matter of quality. He is supported in his testimony by Galen Norman, a baker of Hammond, who testified on the subject and says that the flour in question was a fairly good quality; not the best, but that it made good bread when properly baked. His testimony is not disputed and may be accepted as true.

The claim of the defendant in his telegram that the shipment was not as represented is not established. It was never given a fair trial by the defendant. He refused to receive the first car, without looking at it. The defendant caused it to be sold in Hammond and the sale was made pursuant to stipulations authorizing it in the contract of the parties. The flour brought a fairly good price in Hammond, considering that it was made on a falling market. Under the contract of purchase the defendant has no ground for complaint on that account. The defendant declined to send shipping instructions as to the second car; it was therefore not shipped out of Wichita, Kansas, but was sold there by the plaintiff under the contract by which it was bought. We cannot find from the contract that defendant has any ground for complaint on that account.

Plaintiff complains that the first car should not have been shipped. The evidence shows that it was shipped on March 15, 1930, pursuant to verbal request of defendant to Charles Starns, plaintiff's agent in Hammond.

Defendant's telegram not to ship bears date March 19, 1930, consequently it was too late to stop the shipment. There is no ground for complaint on that account.

Mr. Starns testified that defendant ordered the shipment made on March 15, 1930, then on March 19, 1930, wired that he did not want it; that it was his opinion at the time that defendant was trying to get out of the order because of the falling price, which opinion seems to be justified. The defendant further urges that various charges made against him and which, combined, make up the sum of $742.75, are illegal and erroneous and should not be allowed. The contract supports the charges. Defendant contests a charge of 20 cents per barrel for selling the flour. The contract of purchase provides for this charge; it was due Charles Starns, plaintiff's agent, for his services in making the sale. Mr. Hawkins testified that this item had been paid to Starns. The testimony of Starns is to the effect that it has not been paid him.

It is sufficient for the decision of the present case that the charge is authorized by the contract and that the defendant owes the amount to the plaintiff. The plaintiff is therefore entitled to claim it of him in this case. As for the settlement between Consolidated Flour Mills Company and Starns, that is not a matter we can deal with in the present controversy.

The judgment appealed from is in our opinion correct. Judgment affirmed, defendant and appellant to pay the costs in both courts.