ST. PAUL, J.
 

 On November 11 to 17, 1919, one Bert Wilberson of Childress, Tex., shipped by railroad to Shreveport, La., four cars of cotton seed consigned to one H. H. Watson and took out negotiable bills of lading therefor to the order of said Watson.
 

 To these bills of lading he attached drafts on said Watson, a resident of Longview, Tex., which drafts, with bills of lading attached, were sent for collection to plaintiff.
 

 Through some error on the part of the carrier the four cars went forward on “open” way bills; that is to say, consigned to H. H. Watson, Shreveport, La., not to
 
 order of.
 

 Thereafter Watson telegraphed the carrier to place said cars on defendant’s switch* and on November 26th three cars arrived, and were placed on said switch by the carrier.
 

 The three cars were thereupon at once unloaded by defendants, who telegraphed Watson that same day that the cars were being unloaded.
 

 On November 28th Watson notified the plaintiff bank that said cars had arrived in Shreveport, but did not notify the bank that said cars were being unloaded. Thereupon Watson arranged with the bank to take up three of the drafts which Wilkerson had drawn on him, and to reimburse said bank he indorsed said bills of lading in blank and gave to the bank his own three drafts on defendant. These three drafts, with bills of lading attached, were then forwarded to Shreveport for collection, but defendant refused to pay them. Strange as it seems, yet it appears that plaintiff bank was not informed until February that the defendants had refused to pay .said drafts.
 

 On December 29th the fourth car arrived in Shreveport, and was placed by the carrier on defendants’ switch track, and unloaded by defendants that same day or the next.
 

 It does not appear how Watson received notice of its arrival, or that he ever received notice that it had been unloaded. But on December 30th Watson notified the bank that said car had arrived, and the bank then took up the last of Wilkerson’s drafts on Watson, and had Watson indorse the fourth bill of lading and give his fourth draft on defendants. This draft, with bill of lading attached, was then forwarded for collection, but again defendants refused to pay. Again it appears that plaintiff was not informed until February of defendants’ refusal to pay.
 

 I.
 

 After some months of correspondence and unsuccessful efforts to effect a settlement of some sort or collect its money from some source, all of which is presently immaterial, the bank then brought this suit as holder of the bills of lading to recover from defendants the value of the cotton seed taken and converted by defendants, which value is shown to be $9,330.87, the amount of the drafts drawn by Watson on defendants'and not paid.
 

 The defense is in substance that plaintiff bank is not a holder in due course, and brings this suit, not in its own behalf, but in behalf of said Watson, and for the sole purpose of defeating defendants’ offsets against said Watson, to wit (see article XVI of defendants’ answer):
 

 “Your defendant would further show that the
 
 plaintiff herein .is a party interposed, and has no real interest or right herein; that the real party in interest is the said S. S. Watson;
 
 and that the institution of his suit is the result of fraud and collusion by and between Watson and plaintiff herein, by which the said plaintiff is sought to be interposed and substi
 
 *397
 
 tuted instead of the said Watson in an attempt by. him to evade the payment of a debt he owes defendant and to defeat defendant’s just rights and claims against him, and in this connection your defendant avers:
 

 “That the shipment of the said four cars of seed and delivery thereof to defendant as an open shipment was a part of a series of such business transaction between defendant and the said H. H. Watson, extending through the fall and winter' months of 1919-1920 and, at the time of the receipt of said four cars of seed by your defendant, the value thereof was credited by it to the account of the said H. H. Watson.
 

 “That, subsequent to the receipt by defendant of said four cars of seed, certain disagreements and differences arose between the defendant and the said Watson relative to the amount due the said Watson by defendant.
 

 “That no claims of ownership or of any other sort were made by plaintiff herein touching the said four cars of seed until long after their delivery to defendant, and not until after the differences and disagreements above mentioned had arisen between defendant and the said H. H. Watson, and the claim made herein is fraudulent.
 

 “That, at the time and prior to the delivery to defendant of the four cars of seed aforesaid, the said H. H. Watson owed your defendant the sum of
 
 $4,322.71,
 
 on account of overpayment by your defendant to the said Watson on shipments of cotton seed and demurrage charges owed by said Watson on certain ears; on account of certain credits due defendant from Watson for certain ears of seed, for which it paid and later returned to said Watson; protest fees on drafts owed defendant by said Watson; credits due defendant from Watson on account of damaged seed, paid for as good seed; credits due defendant from said Watson on account of deficiency in weight of certain shipments; and various other items as will appear from itemized statements of account hereto attached and made part hereof; which said amount was and is due your defendant from said Watson; and your defendant avers that the said Watson was well aware of said claim, and that defendant would urge the same as a just
 
 set-off
 
 and compensation against his claim and demands should he bring a suit against defendant in his own name.”
 

 And the prayer of the petition is that plaintiff’s demand be rejected and in the alternative that it be allowed an offset of $4,322.71 against the amount claimed by plaintiff (being in fact the difference between the amount claimed by plaintiff, $9,330.87, and the balance due Watson according to its boohs, $5,008.18), to wit, for sundry alleged overcharges, both as to weight and as to price, also interest, demurrage, etc., less certain credits.
 

 II.
 

 From all of which it.appears quite clear that we have before us for consideration nothing but a question of fact; and that question is whether the plaintiff bank is without real interest in the controversy, and merely attempting to assist Watson in the collection of his claim in full without deductions from defendants, or whether, by an unfortunate error of the carrier in delivering the cotton seed without requiring the bill of lading, defendants are withholding plaintiff’s property, even in good faith, until it can obtain an adjustment of its alleged but disputed claim against Watson. We say “in good faith,” because defendants seem sincere in their claim that they are entitled to said offset of $4,322.71 against Watson, and seem to have been willing at all times to’ pay the balance of $5,008.18,' which stands to the credit of Watson on their books. But on the other hand Watson denies that defendants are entitled to said offset of $4,322.71, and claims, on the contrary; that defendants are still further indebted to him in the sum of $6,005.80 for failure to accept 15 other cars purchased.
 

 IV.
 

 The vice president of plaintiff bank came from Longview to attend the trial, bringing with him all the records of the bank in connection with Watson’s cotton seed business and the purchase of these bills of lading. He had personally attended to these transactions, and testified thereof in open
 
 *399
 
 court before the trial judge. He testified, and the bank records show, that the bank purchased the bills of lading in good faith and gave Watson credit for the full value thereof, to wit, $6,907.21 ($6,907.52) on November 28th (amount of three drafts) and $2,423.35 on December 30th, making a total of $9,330.56 ($9,330.87), and that the bank made no other profit on the transaction than a small charge for collection. He testified further that Watson had drawn out the full amount of these credits, and was further indebted to the bank in a sum approximating $5,000, then overdue and unpaid; that the amount of the drafts drawn by Watson ($9,330.87) had not been charged back to Watson’s account (his balance never since having exceeded $500); and that the bank stood to lose the said sum of $9,330.87, unless it could collect the amount thereof from defendant or from the carrier.
 

 The trial judge who, as we have said, saw and heard this witness, and had before him the records of the bank, evidently believed his testimony was true, since he gave judgment for plaintiff; and our conclusion, after a careful examination of the transcript, is that the trial judge was correct.
 

 For the rest, the defendants (even though acting in good faith) were simply not entitled to the four cars of cotton seed, since the carrier had no right to deliver them without the surrender of the bills of lading. The cotton seed was the property of plaintiff who held the bills of lading therefor. Barnes’ Federa) Code, § 8008 (Federal Bill of Lading Act [U. S. Comp. St. § 8604p ]); Act 94 of 1912, § 32, p. 108 (Uniform Bill of Lading Act).
 

 Decree.
 

 The judgment appealed from is therefore affirmed.