TENNESSEE EGG CO. *v.* H. B. MONROE.*

(*Nashville.* December Term, 1924.)

1. **EQUITY.** Petition for rehearing filed year and a half after original, hearing raising jurisdictional question for first time, held properly denied.

   Petition to rehear, made year and a half after first hearing and decision adverse to petitioner, wherein jurisdiction of court and regularity of proceedings was first questioned, *held* properly denied. (*Post, pp.* 123, 124.)

2. **ATTACHMENT.** Transferee of straight bill of lading covering shipment held entitled to intervene in attachment proceedings by creditor of consignor.

   Transferee of straight bill of lading covering shipment of poultry wherein consignor was named consignee, who had paid draft accompanying such bill of lading, *held* entitled to intervene in attachment proceedings by creditor of consignor and assert whatever claim he might have to such shipment. (*Post, pp.* 124-128.)

3. **CARRIERS.** Consignor using ''order bill'' of lading surrenders control of goods, and person acquiring bill takes title.

   Under federal Bill of Lading Act (U. S. Comp. St., sections 8604aaa-8604w) consignor using "order bill" loses control over goods, and person acquiring bill obtains good title as against owner, his vendee, or creditors. (*Post, p.* 129.)

4. **ATTACHMENT.** Consignor using ''straight bill'' of lading retains control of goods, which also remain subject to levy or attachment of his creditors.

   Under federal Bill of Lading Act (U. S. Comp. St., section 8604aaa-8604w), consignor using "straight bill" retains control of goods, can reclaim them, convey them to third party, or stop them *in transitu,* and goods so shipped are liable to levy or attachment at instance of consignor's creditors, except as provided in section 32. (*Post, p.* 129.)

5. **CARRIERS.** Transferee of straight bill of lading held not entitled to shipment or proceeds thereof as against attaching creditor of consignor.

Under federal Bill of Lading Act, section 2, 3, 6, 8, 23, 27 to 32, inclusive, and 39 (U. S. Comp. St., section 8604aaaa; 8604b, 8604cc, 8604dd, 8604l, 8604n-8604pp, and 8604t) particularly section 32, declaring that transferee of straight bill of lading acquires title to goods shipped as against transferor, and on notifying carrier becomes direct obligee of whatever obligations it owed transferor immediately before notification, transferee of straight bill of lading, wherein consignor was also named consignee, who had not notified carrier of such transfer before attachment of shipment by a creditor of consignor, *held* not entitled to shipment or its proceeds as against creditor, notwithstanding its payment of accompanying draft on acquisition of bill of lading. (*Post*, pp. 129-131.)

---

*Headnotes 1. Equity, 21 C. J., Section 872; 2. Attachment, 6 C. J., Section 832; 3. Carriers, 10 C. J., Section 317; 4. Attachment, 6 C. J., Section 350; 5. Carriers, 10 C. J., Section 317 (1926 Anno.).

---

FROM HAMILTON.

---

Appeal from the Chancery Court of Hamilton County. —Hon. W. B. GARVIN, Judge.

WILKERSON & HYDE, for Egg Co.

C. C. MOORE, for Monroe.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

Complainant, by bill filed in the chancery court at Chattanooga, on February 18, 1922, attached a car of poultry, alleging that it was the property of its debtor, H. B. Monroe. Monroe suffered a decree to be entered against him by default.

On March 18, 1922, L. J. Schwaub & Sons, Incorpo·rated, of New York, intervened by petition, alleging that it purchased said car of poultry from defendant, for which a draft was drawn on it for $3,700. attached to which was a bill of lading covering said car of poultry, and that it paid said draft on February 17, 1922, and acquired said bill of lading before the car of poultry was attached by complainant.

Petitioner alleged that the property belonged to it; that by attaching said car of poultry complainant converted same and was liable to petitioner for its value, for which a decree was sought.

Answer was filed by complainant to the petition deny·ing that it had any lawful claim to said poultry, and, upon the issue thus made, the chancellor decreed in favor of the complainant.

Before the filing of said petition a receiver had been appointed, the poultry sold, and the proceeds paid into court.

From the decree of the chancellor, said petitioner has appealed to this court and has assigned numerous errors questioning the correctness of the chancellor's decree.

Preliminarily it should be said that after the cause was heard upon its merits and decided adversely to peti·tioner, and after the cause had been pending for a year and a half, petitioner filed a petition to rehear, in which

it for the first time questioned the jurisdiction of the court, the regularity of the attachment proceedings, etc.

The chancellor very promptly and correctly dismissed the petition to rehear.

Petitioner, having intervened for the purpose of a decision upon the merits, and after having been cast in the suit, will not be permitted to trifle or experiment with the court by undertaking to have another hearing upon questions not previously pleaded or relied upon and which did not go to the merits of the cause.

We are of the opinion that said petitioner had a right to intervene in this cause.

This brings us to the real issue in the cause, viz., whether complainant or the petitioner is entitled to said poultry, or its proceeds, under the provisions of the federal Bill of Lading Act (U. S. Comp. St., sections 8604aaa-8604w), which it is conceded, controls in this matter.

It is admitted that petitioner did not notify the carrier of the transfer of said bill to it.

The federal Bill of Lading Act deals with two kinds of bills of lading, "straight" and "order."

The one in question was a "straight bill of lading," and written upon its face are the words: "Not negotiable."

H. B. Monroe was named as consignee in said bill.

The following are the provisions of the act which bear upon the question at issue, viz.:

"Sec. 2. That a bill in which it is stated that the goods are consigned or destined to a specified person is a straight bill.

"Sec. 3. That a bill in which it is stated that the goods are consigned or destined to the order of any person named in such bill is an order bill. Any provision in such a bill or in any notice, contract, rule, regulation, or tariff that it is nonnegotiable shall be null and void and shall not affect its negotiability within the meaning of this act unless upon its face and in writing agreed to by the shipper. . . ."

"Sec. 6. That a straight bill shall have placed plainly upon its face by the carrier issuing it 'nonnegotiable' or 'not negotiable.' . . ."

"Sec. 8. That a carrier, in the absence of some lawful excuse, is bound to deliver goods upon a demand made either by the consignee named in the bill for the goods, or, if the bill is an order bill, by the holder thereof, if such a demand is accompanied by—

"(a) An offer in good faith to satisfy the carrier's lawful lien upon the goods;

"(b) Possession of the bill of lading and an offer in good faith to surrender, properly indorsed, the bill which was issued for the goods, if the bill is an order bill; and

"(c) A readiness and willingness to sign, when the goods are delivered, an acknowledgment that they have been delivered, if such signature is requested by the carrier.

"In case the carrier refuses or fails to deliver the goods, in compliance with a demand by the consignee or holder so accompanied, the burden shall be upon the carrier to establish the existence of a lawful excuse for such refusal or failure. . . ."

"Sec. 23. That if goods are delivered to a carrier by the owner or by a person whose act in conveying the title to them to a purchaser for value in good faith would bind the owner, and an order bill is issued for them, they cannot thereafter, while in the possession of the carrier, be attached by garnishment or otherwise or be levied upon under an execution unless the bill be first surrendered to the carrier or its negotiation enjoined. The carrier shall in no such case be compelled to deliver the actual possession of the goods until the bill is surrendered to him or impounded by the court. . . ."

"Sec. 27. That an order bill may be negotiated by delivery where, by the terms of the bill, the carrier undertakes to deliver the goods to the order of a specified person, and such person or a subsequent indorsee of the bill has indorsed it in blank.

"Sec. 28. That an order bill may be negotiated by the indorsement of the person to whose order the goods are deliverable by the tenor of the bill. Such indorsement may be in blank or to a specified person. If indorsed to a specified person, it may be negotiated again by the indorsement of such person in blank or to another specified person. Subsequent negotiation may be made in like manner.

"Sec. 29. That a bill may be transferred by the holder by delivery, accompanied with an agreement, express or implied, to transfer the title to the bill or to the goods represented thereby. A straight bill cannot be negotiated free from existing equities, and the indorsement of such a bill gives the transferee no additional right.

"Sec. 30. That an order bill may be negotiated by any person in possession of the same, however such possession may have been acquired, if by the terms of the bill the carrier undertakes to deliver the goods to the order of such person, or if at the time of negotiation the bill is in such form that it may be negotiated by delivery.

"Sec. 31. That a person to whom an order bill has been duly negotiated acquires thereby—

"(a) Such title to the goods as the person negotiating the bill to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the consignee and consignor had or had power to convey to a purchaser in good faith for value; and

"(b) The direct obligation of the carrier to hold possession of the goods for him according to the terms of the bill as fully as if the carrier had contracted directly with him.

"Sec. 32. That a person to whom a bill has been transferred, but not negotiated, acquires thereby as against the transferor the title to the goods, subject to the terms of any agreement with the transferor. If the bill is a straight bill such person also acquires the right to notify the carrier of the transfer to him of such bill and thereby to become the direct obligee of whatever obligations the carrier owed to the transferor of the bill immediately before the notification.

"Prior to the notification of the carrier by the transferor or transferee of a straight bill the title of the transferee to the goods and the right to acquire the obligation of the carrier may be defeated by garnishment or by attachment or execution upon the goods by a creditor of the

transferor, or by a notification to the carrier by the trans-
feror or a subsequent purchaser from the transferor of
a subsequent sale of the goods by the transferor.

"A carrier has not received notification within the
meaning of this section unless an officer or agent of the
carrier, the actual or apparent scope of whose duties in-
cludes action upon such a notification, has been notified;
and no notification shall be effective until the officer or
agent to whom it is given has had time, with the exer-
cise of reasonable diligence, to communicate with the
agent or agents having actual possession or control of
the goods. . . ."

"Sec. 39. That where an order bill has been issued for
goods no seller's lien or right of stoppage *in transitu*
shall defeat the rights of any purchaser for value in
good faith to whom such bill has been negotiated, whether
such negotiation be prior or subsequent to the notifica-
tion to the carrier who issued such bill of the seller's
claim to a lien or right of stoppage *in transitu*. Nor shall
the carrier be obliged to deliver or justified in delivering
the goods to an unpaid seller unless such bill is first sur-
rendered for cancellation."

It is said that this is a case of first impression, and
that no decision is to be found, State or federal, in which
section 32 of the act has been construed.

There are numerous decisions recognizing a distinc-
tion between the two kinds of bills of lading, and treat-
ing one as negotiable and the other as nonnegotiable.

We have carefully considered the act in its entirety
and entertain little doubt as to its purpose and meaning.

The owner can choose which form of bill he will ship under. If an "order bill," and he negotiates same, his control over the goods is gone, and the person acquiring the bill obtains good title as against the owner, his vendee, or his creditors.

If he ships under a "straight bill" the goods are still under his control, and he can reclaim them, convey them to a third party, or stop them *in transitu,* or they can be levied upon or attached by his creditors, subject to the exception to be referred to later in this opinion. In neither of these instances would the transferee of such a bill be entitled to the goods.

By the first clause in section 32 of the act it is provided that "a person to whom a bill has been transferred, but not negotiated, acquires thereby as against the transferor the title to the goods."

So that, on February 17th, the petitioner herein acquired title to the poultry as against defendant Monroe.

By the next clause it is provided that the transferee of a straight bill "acquires the right to notify the carrier of the transfer to him of such bill and thereby to become the direct obligee of whatever obligations the carrier owed to the transferor of the bill immediately before the notification."

The obligation which the carrier owed to the transferor (consignee) was to deliver the goods to him, as provided in section 8, and the possession and surrender of the bill of lading was not required. Such requirement is necessary only if the bill is an "order bill."

Here Monroe was the consignee and the carrier was obligated to deliver the car of poultry to him; and by transferring the bill to petitioner the carrier would have been obligated to deliver the car of poultry to it, provided notice had been given the carrier prior to the time the car of poultry was attached.

In other words, had such notice been served on February 17th, at the time the draft was paid and the bill transferred, the petitioner's claim to the poultry would have been superior to that of complainant.

But the next clause of the paragraph provides that such right may be defeated "by garnishment or by attachment or execution upon the goods by a creditor of the transferor, or by a notification to the carrier by the transferor or a subsequent purchaser from the transferor of a subsequent sale of the goods by the transferor."

The petitioner acquired title as against Monroe, and would have acquired title against the complainant had it given notice prior to the levy of the attachment. But the act states expressly that the title of the transferee is defeated by a levy prior to the notification of the carrier of the transfer of the bill.

This interpretation makes section 32 effective, sensible, and expressive of what appears to us to be the clear legislative intent.

Looking at the matter from a practical standpoint, we know that shippers of produce and poultry frequently start a car to "rolling" to a given destination or person, and then direct the car to another place or person, and, no doubt, it was to cover such cases that the "straight bill" was provided, so that the consignor could control the destiny and disposition of the goods.

Tennessee Egg Co. v. Monroe.

Upon the other hand, in the case of a sale, the "order bill," attached to the draft for the purchase price, protects both seller and buyer, and such a bill should be required by the buyer. If he is content to part with his money upon the strength of a bill stamped "not negotiable" upon its face, he does so at his peril.

Counsel for petitioner has placed a different construction upon section 32 of the act, but has found no authority to support his insistence, and upon reason same appears to us to be unsound, and it is unnecessary to prolong this opinion by any further discussion. The paragraph in question is clear and unambiguous and speaks for itself.

We find no error in the decree of the chancellor and it will be affirmed with costs.

The cause will be remanded for the purpose of executing the decree of the chancellor.