(116 So. 575)

No. 28962.

**CALIFORNIA FRUIT EXCHANGE v. JOHN MEYER, Inc.**

**In re CALIFORNIA FRUIT EXCHANGE.**

March 12, 1928. Rehearing Denied April 9, 1928.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, for applicant.

Edgar M. Cahn, of New Orleans (Leon S. Cahn, of New Orleans, of counsel), for respondent.

ROGERS, J. This is a suit to recover the difference between the invoice price of a carload of peaches, which plaintiff alleges it sold to defendant, and the amount realized from their sale at auction, after defendant had refused to accept them.

The defendant is a wholesale dealer in fruits in the city of New Orleans. In the early part of the month of August, 1920, it entered into an oral agreement with the district manager of the plaintiff for the sale and purchase of a carload of peaches. The peaches, which were shipped from California consigned to plaintiff on a straight bill of lading drawn in its name, reached New Orleans in the latter part of the month. Upon the arrival of the shipment, plaintiff's local manager notified defendant and offered to surrender the documents necessary to obtain its delivery from the carrier on payment by defendant of the invoice price. Defendant inspected the peaches and finding them to be in a damaged condition refused to accept delivery. Thereupon, plaintiff caused them to be sold at public auction, resulting in a loss equal to the amount herein sued for.

Plaintiff contends that the sale was made with acceptance at the shipping point in California and that the risk of loss in transit was assumed by defendant. Per contra, defendant contends that the sale was made subject to its right of inspection and rejection at New Orleans. The district court found that, on the facts, the peaches remained the property of the plaintiff until accepted by the defendant in New Orleans. The Court of

Appeal, on the other hand, resolved the disputed question of fact in favor of plaintiff, holding that the contract was for "California acceptance." However, it affirmed the judgment on the ground that the delivery by the plaintiff of the peaches to the carrier in California consigned to itself in New Orleans on a bill of lading in its name was not an appropriation of the peaches to the contract calling for California acceptance so as to place the risk of transportation upon the defendant.

The finding of fact by the Court of Appeal necessitated its consideration and discussion of certain provisions of the Uniform Bills of Lading Act, which has been adopted in this state (Act 94 of 1912), invoked by the plaintiff. On this phase of the case, the court reached the conclusion, and so ruled, that, notwithstanding the qualifying clause in subsection (b) of section 40 of the statute, the law of this state did not recognize divided incidents of ownership subsisting in the seller and buyer of personal property. It is because of this ruling that the case was ordered up for review.

■ Plaintiff argues that whatever might have been the law of the state prior to the adoption of Act 94 of 1912, the general rule since that time has been that, upon a sale with acceptance at point of shipment, title passes from the vendor to the vendee at the moment of delivery to the carrier, and the goods sold are thereafter at the vendee's risk. Conceding the soundness of the argument, the operation of the rule is nevertheless subordinate to the intention of the contracting parties. In the case at bar, if the agreement was for California acceptance, as plaintiff contends, the rule applies. If, on the other hand, the agreement was for New Orleans acceptance after inspection, as defendant claims, the rule does not apply. The application vel non of the rule therefore depends upon the facts of the case. We have

carefully examined these facts, and our conclusion is, contrary to that of the Court of Appeal but in consonance with that of the district court, that the plaintiff has not brought its claim within the statutory rule which it invokes.

■ Plaintiff's manager testified that he did not recollect who gave him the order for the peaches, whether it was Mr. Meyer, the president of the defendant company, or a Mr. Chalona, an independent operator, who was, as he thought interested in the deal. He declared, however, his recollection was clear on the subject-matter of the agreement; that a written confirmation of the order was sent by him to Mr. Meyer, and that the invoice bearing the notations. "Sold f. o. b. California," and "sold subject to California acceptance," was sent by him to the Fruit Auction Company for account of the defendant. It is clear from the testimony of Mr. Chalona that, even if he was interested in the shipment, which is not certain, he was not an actual party to the contract, which was entered into between Mr. Meyer, the president of the defendant company, and Mr. Johnson, the plaintiff's local manager. Mr. Meyer testified: That he had no recollection of receiving a written confirmation of the order calling for a sale f. o. b. subject to California acceptance. That if he had received such a letter he would have promptly returned it for the reason that he had no recollection and no record of any such purchase. The uncontradicted testimony in the record is that the universal custom among the wholesale dealers in fruits in New Orleans is to buy only upon arrival and after inspection of the fruit. This custom had always been observed between the New Orleans merchants and the plaintiff before Mr. Johnson became plaintiff's district manager at this point. Mr. Meyer, in the course of his testimony, stated also: That he had had other transactions before and since with the plaintiff's local manager, all of which were

entered into with the reservation of right of inspection and acceptance at New Orleans. That in all of his business experience, covering 30 years, except in two or three instances, he never had bought fruit from any one without the right of inspection and rejection on arrival, and that in the instances where he had departed from this rule special contracts had been drawn and signed. Mr. Johnson, plaintiff's agent, testified that the carload of peaches was the first one he had sold in New Orleans for California acceptance. It also appears, according to the record, to have been the only one sold in that manner. The bill of lading shows that the shipment was consigned to the shipper, care of its district manager, at the point of destination, and it bears the notation, evidently placed thereon by plaintiff, viz.:

"Note on Waybill.

"Permit inspection before unloading without bill of lading. Deliver without bill of lading on written order of California Fruit Exchange."

Why is it, if the agreement was that the title to the peaches was to pass from the seller to the buyer at the moment of delivery to the carrier, the bill of lading was not drawn to the consignee or its order? Plaintiff's explanation that it was not done because of its desire to secure the payment of the purchase price is not convincing. The same object could have been attained by attaching to a draft the bill of lading running to the consignee, deliverable only upon payment of the draft. This would have been the simple and usual method followed in such cases. Again, by whom was the inspection to be permitted under the authorization marked upon the waybill before the car was unloaded? If by defendant, then its contention that it had reserved the privilege of inspecting and rejecting is corroborated; if by the plaintiff, then its contention that the peaches became defendant's property at the point of shipment loses its force. If the title to the peaches

after they were placed in the car was in defendant, plaintiff was without interest to inspect them. On the other hand, the right of inspection might have proved valuable, in the event plaintiff had desired to divert the shipment en route as it would have had a right to do as the consignee named in the bill of lading.

Our conclusion is that the plaintiff has not established by a preponderance of the evidence the contract for the alleged breach of which it seeks recovery in this suit.

For the reasons assigned, the rule nisi herein issued is recalled and the judgment of the Court of Appeal is affirmed at the cost of the relator.