## GERDE–NEWMAN & CO. v. LOUISIANA STORES, Inc.

### No. 4385.

Court of Appeal of Louisiana, Second Circuit.

Dec. 16, 1932.

McHenry, Montgomery, Lamkin & Lamkin, of Monroe, for appellant.

Hudson, Potts, Bernstein & Sholars, of Monroe, for appellee.

DREW, J.

Plaintiff sued for $300, the alleged purchase price of one lot of sardines and salmon. It alleged that on September 1, 1928, defendant, through its agents and brokers, Gregg & McKenzie, Inc., ordered the said sardines and salmon, and that plaintiff sold, shipped, and delivered to defendant, f. o. b. New Orleans, La., a certain itemized lot of sardines and salmon for the price of $300; that, acting upon the instructions given by said brokers, the shipment of goods was delivered to and received in good order by the Louisiana-Arkansas Barge Service, a common carrier, by water, from New Orleans, La., to Monroe, La., for transportation and delivery to defendant at Monroe, La., under its contract or bill of lading, dated September 1, 1928.

It alleged amicable demand and prayed for judgment, in accordance with the allegations of the petition.

Defendant filed an exception of no cause of action, which was overruled. It then answered, denying the allegations of plaintiff's petition, and averred that the goods in question were shipped on open bill of lading, shipper's order notify, and that said bill of lading was attached to a draft on defendant and forwarded to the Ouachita National Bank, of Monroe, La., for collection; that, before said draft was presented and paid, said goods were lost by said carrier; that plaintiff filed claim with the said carrier, which is now in the hands of a receiver, for its account; and that defendant has never had possession of the bill of lading covering the goods in question.

On the issues as thus made up, the case was tried in the lower court, resulting in the demands of plaintiff being rejected. From this judgment it appealed. There is no answer to the appeal; therefore the exception of no cause of action is not before us for consideration.

In August, 1928, defendant gave an order to Gregg & McKenzie, Inc., its broker at Monroe, for the merchandise in question, which order was transmitted by them to the New Orleans brokers, who placed the order with plaintiff. Plaintiff delivered the goods in good condition to the barge line for transportation to Monroe. En route, the barge sank and the shipment of goods was destroyed.

Plaintiff drew a draft upon defendant, through the Ouachita National Bank of Monroe, for the amount of the bill, viz. $300, and attached thereto the bill of lading with instructions to the bank not to deliver to defendant until the draft was paid. The bill of lading shows the shipper to be the plaintiff and consigned to the shipper, the plaintiff, notify the defendant. On the bill of lading there is the notation, "allow inspection." The draft was never paid by defendant, and therefore the bill of lading was never given into its possession.

After the loss, plaintiff made a claim on the barge line for the price of the lost goods, without success. On October 3, 1928, plaintiff wrote the barge company as follows: "With reference to the conversation with you about the sinking of the barge which contained a shipment of ours going to the Louisiana Stores Company, Inc., amounting to $300.00, we enclose herewith bill for $300.00 and original order notify bill of lading. We understand that these goods were insured for ten per cent more than the invoice, plus the freight, if any was paid. We would thank you to make arrangements to let us have your check."

This letter was followed by letters to the barge company on October 26th, November 6th, November 15th, and November 22d. It is always spoken of as "our claim." On September 13, 1928, prior to the filing of the claim, plaintiff wrote to defendant as follows:

"Louisiana Stores Co. Inc., Monroe, La.

"Gentlemen: Mr. Trapani has handed us our invoice against you of September 4 for $300.00.

"We have gotten in touch with the Louisiana-Arkansas Barge Line. They admit that

the barge was sunk and that the bill of lading carries insurance. As there is no other insurance on these goods their insurance company will pay to the owner of the goods the amount the goods cost the owner.

"We must have the original bill of lading for this insurance claim as these goods were sold FOB New Orleans, La. We would thank you to take up this draft at the bank and send us the original bill of lading. If you do not take up this draft and become the owner of these goods, all that we can recover is the amount that the goods cost us, we being the owner. We would appreciate your doing this at once as these were your goods at the time we obtained the clean receipt from the carrier. There is no question but that your claim will be paid. We will file it for you.

"Yours truly,
"Gerde-Newman & Company."

And on September 24, 1928, wrote again as follows:

"Louisiana Stores Co. Inc., Monroe, La.

"Gentlemen: We would appreciate an answer to our letter of September 13th. If you do not propose to pay this draft, please notify us. It will simply mean a loss of money to us. As a matter of absolute truth, these goods belonged to you at the time that the boat sank. However, if you don't take this view of it, please let us know. We must get the money from somebody.

"Yours truly,
"Gerde-Newman & Company."

The record discloses that the draft was not paid because inspection was impossible, and that inspection of the goods was contemplated by all parties to the transaction. Also that defendant had no particular arrangement with the broker, paid them no commission, and always required inspection before acceptance of like goods and payment for same.

Act No. 94 of 1912, § 40, known as the Uniform Bill of Lading Act, in dealing with the form of bill as indicating the rights of the buyer and seller, reads as follows:

"Where the goods are shipped by the consignor in accordance with a contract or order for their purchase, the form in which the bill is taken by the consignor shall indicate the transfer or the retention of the property or right to the possession of the goods as follows:

"(a) Where by the bill the goods are deliverable to the buyer or to his agent, or to the order of the buyer or of his agent, the consignor thereby transfers the property in the goods to the buyer.

"(b) Where by the bill the goods are deliverable to the seller or to his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods. But if, except for the form of the bill, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract.

"(c) Where by the bill the goods are deliverable to the order of the buyer or of his agent, but possession of the bill is retained by the seller or his agent, the seller thereby reserves a right to the possession of the goods, as against the buyer.

"(d) Where the seller draws on the buyer for the price and transmits the draft and bill together to the buyer to secure acceptance or payment of the draft, the buyer is bound to return the bill if he does not honor the draft, and if he wrongfully retains the bill he acquires no added right thereby. If, however, the bill provides that the goods are deliverable to the buyer, or to the order of the buyer, or is indorsed in blank or to the buyer by the consignee named therein, one who purchases in good faith, for value, the bill or goods from the buyer, shall obtain the title of the goods, although the draft has not been honored, if such purchaser has received delivery of the bill indorsed by the consignee named therein, or the goods, without notice of the facts making the transfer wrongful."

■ It is under authority of subsection (b) that plaintiff rests its case and contends that the consignment to the seller, notify purchaser, was only for the purpose of securing performance by the buyer of his obligation to pay for the goods before receiving them, and that the property passed to the buyer upon shipment of the goods. The meaning of this last sentence in this subsection is that, where there is an express agreement between the seller and buyer that title shall pass upon delivery to the carrier, then the form of the bill of lading will not vary the agreement; and, when the seller had issued a bill of lading whereby the goods are deliverable to the seller, the burden is on the seller to show an agreement that title to the goods was to pass to the buyer on delivery to the carrier, otherwise the first sentence in subsection (b) will govern, and the ownership of the goods be held to remain in the seller.

The syllabus in the case of U. Koen & Co., Inc., v. New Winnfield Drug Company, 13 La. App. 233, 125 So. 764, correctly states the rule in the following language: "In suit for goods sold and delivered, presumption does not exist that title of merchandise sold passed to buyer on delivery to carrier and that shipment was at buyer's risk, in absence of evidence establishing that parties so agreed, or that bill of lading directed delivery to buyer, in view of Act No. 94 of 1912"—citing First Nat. Bank v. Henderson, 157 La. 394, 102 So. 501.

■ Plaintiff has failed to establish any agreement between seller and buyer whereby

title would pass upon delivery to carrier. It contends that the very fact that the goods were ordered f. o. b. New Orleans is sufficient to show the agreement and intention of the parties. The testimony does not show there was any agreement that the goods were to be ordered or were ordered f. o. b. New Orleans. The testimony of the brokers is that, if no specific directions are given, it is customary to ship f. o. b. New Orleans, but the testimony also shows that defendant never paid for goods nor considered the goods its own until inspection. If the goods were as ordered, after inspection, they paid for them and the freight. If not up to specifications, they paid neither. In fact, in this case, the only meaning that could be given "f. o. b." is that, if the goods were accepted by defendant, they would also pay the freight.

It is impossible from the testimony in this case to arrive at the conclusion that there was ever any intention on the part of defendant to accept title to the goods until they had inspected them and found they were the goods ordered and in good condition, and the statement in the letter from plaintiff to defendant, of date September 13, 1928, "If you do not take up this draft and become the owner of these goods, all that we can recover is the amount that the goods cost us, we being the owner," is strong indication that the plaintiff did not intend for the goods to be or considered the goods the property of defendant until the draft was paid.

A case very similar to this case is State v. Federal Sales Co., 172 La. 921, 136 So. 4. In that case the court said:

"The record discloses that the Premier Malt Sales Company, at the time of the seizure, was the holder of a negotiable bill of lading, covering the shipment, showing that the malt was consigned by the Premier Malt Products Company, a manufacturing subsidiary of the Premier Malt Sales Company, to the order of the latter company, destination New Orleans, with instructions to notify the Federal Sales Company, c/o Appalachian Warehouse, at New Orleans, La. The bill of lading was indorsed by the Premier Malt Sales Company to the order of the Whitney Central Trust & Savings Bank, New Orleans, La., and was forwarded to the bank, attached to a draft on the Federal Sales Company and to an invoice, with instructions to deliver the bill of lading upon payment of the draft. At the time the malt was attached as the property of the Federal Sales Company, the draft was still in the hands of the bank unpaid, and the bill of lading had not been surrendered. * * *

"We feel safe in holding, under the facts before us, that the malt, which was seized, is the property of the Premier Malt Sales Company. Act No. 94 of 1912, the Uniform Bills of Lading Act, in section 40 thereof, provides that: 'Where by the bill the goods are deliverable to the seller or to his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods.' "

California Fruit Exchange v. Meyer, 166 La. 9, 116 So. 575, 576, is also in point, and the court, in deciding that case, said: "Why is it, if the agreement was that the title to the peaches was to pass from the seller to the buyer at the moment of delivery to the carrier, the bill of lading was not drawn to the consignee or its order? Plaintiff's explanation that it was not done because of its desire to secure the payment of the purchase price is not convincing. The same object could have been attained by attaching to a draft the bill of lading running to the consignee, deliverable only upon payment of the draft. This would have been the simple and usual method followed in such cases. Again, by whom was the inspection to be permitted under the authorization marked upon the waybill before the car was unloaded? If by defendant, then its contention that it had reserved the privilege of inspecting and rejecting is corroborated; if by the plaintiff, then its contention that the peaches became defendant's property at the point of shipment loses its force. If the title to the peaches after they were placed in the car was in defendant, plaintiff was without interest to inspect them. On the other hand, the right of inspection might have proved valuable, in the event plaintiff had desired to divert the shipment en route as it would have had a right to do as the consignee named in the bill of lading."

We find no error in the judgment of the lower court, and it is therefore affirmed, with costs.