**SUPERVISOR OF PUBLIC ACCOUNTS OF LOUISIANA v. TWELVE CASES OF SMOKING TOBACCO (GULF COAST TOBACCO CO., Intervener).**

No. 16129.

Court of Appeal of Louisiana. Orleans.

Feb. 8, 1937.

Shirley G. Wimberly and Alden W. Muller, both of New Orleans, for appellant.

Charles J. Rivet, Sp. Asst. to Atty. Gen., for appellee.

McCALEB, Judge.

Some time during the early part of the month of February, 1935, investigators, employed by the Supervisor of Public Accounts of Louisiana, discovered twelve case of unstamped smoking tobacco, on which the tax levied under the provisions of Act No. 4 of 1932 had not been paid, in the custody of the Louisville & Nashville Railroad Company at its freight shed in the city of New Orleans. Inquiry revealed that this tobacco had been shipped from Mobile, Ala., by persons describing themselves as "The Cut Rate House" and the "D. Fried Merc. Co." and consigned to various persons in New Orleans named Jack Gordon, Jos. Gordon, L. Leonard, Rex Trading Company, and French Market Merc. Company.

Further investigation disclosed that the names of all of the consignors and the consignees were fictitious, and the Supervisor of Public Accounts, acting under the authority vested in her by section 17 of Act No. 4 of 1932 as amended by section 8 of Act No. 52 of 1934, proceeded by rule in the Civil District Court for the parish of Orleans seeking a forfeiture of the tobacco.

Upon allegation being made that the smoking tobacco was shipped into Louisiana with the design of avoiding payment of the taxes imposed by the law of this state, and upon further allegation that the names of the consignors and consignees of the tobacco were fictitious, the district court, in accordance with the provisions of law, appointed a curator ad hoc to represent the absent and unknown owners of the said tobacco and further ordered the civil sheriff to seize and take into his possession said tobacco and to hold the same until further orders of the court.

Under the provisions of section 17 of Act No. 4 of 1932, as amended, it is declared in part:

"Whenever the petition for rule shall be sworn to by the Supervisor of Public Accounts, or an assistant, that the facts contained in said petition are true, and accompanied with a duplicate copy of the notice of seizure, the same shall constitute a prima facie case, but may be rebutted by the defendant."

The rule taken by the Supervisor in the case at bar was duly sworn to, and under the above-quoted section the burden of proof was then cast upon the owner of the tobacco to show to the court, by satisfactory evidence, that the laws of the State of Louisiana had not been knowingly violated, otherwise the court was duty bound to maintain the forfeiture.

Shortly after the rule was filed, a concern, styling itself as the Gulf Coast Tobacco Company, alleged to be a commercial copartnership domiciled and doing business in Mobile, Ala., appeared and set forth, in substance, that it was in truth and in fact the owner of the tobacco seized, and that said merchandise had been shipped by it to the persons and firms shown as the consignees on the bills of lading at the request of unknown parties representing themselves as being agents and representatives of genuine and legitimate firms handling tobacco in the city of New Orleans. The claimant further averred that it is a genuine, bona fide, and reputable business establishment, lawfully engaged in the handling of tobacco products at Mobile, Ala.; that it had no intention of violating the law of this state; and prayed to be declared the owner of said smoking tobacco and further, because of its innocence in the premises, that the smoking tobacco be turned over to it by the civil sheriff and that the forfeiture proceedings of the Supervisor of Public Accounts be dismissed.

Upon the issues presented, the case proceeded to trial; and the district judge maintained the validity of the seizure, ordered the smoking tobacco forfeited to the state, and dismissed the claim of the Gulf Coast Tobacco Company. From this adverse judgment, the Gulf Coast Tobacco Company has appealed.

In order to substantiate its claim of ownership to the tobacco, the appellant produced only one witness, K. S. Yon of Mobile, Ala. He testified that he is the sales manager of the Gulf Coast Tobacco Company, which he says is a copartnership composed of one Joseph Mitchell and one S. J. Ripos; that during the early part of February, 1935, an unknown person came into the place of business of the Gulf Coast Tobacco Company and represented to the witness that he was desirous of making certain purchases of tobacco for reputable tobacco merchants in the city of New Orleans; that the purchases were made; and that, at the request of this unknown person, the goods were shipped in the name of the Cut Rate House and other names, as consignors, to be delivered to certain other parties, unknown to Yon, as consignees. The witness further related that a deposit was made with the Gulf Coast Tobacco Company by the unknown person to cover the freight charges on said tobacco from Mobile to New Orleans. The original bill of lading was not produced, and it is readily conceded that the names of all consignors and consignees connected with the shipment of tobacco are fictitious.

The contention of the appellant here is that the Gulf Coast Tobacco Company was innocent of any wrongdoing, and that, under the provisions of section 8 of Act No. 4 of 1932 as amended by Act No. 52 of 1934, § 5, it is the intent and purpose of the act to levy an excise tax on smoking tobacco sold, used, consumed, handled, or distributed in this state and to collect from the dealer who first distributes or sells it

in the State of Louisiana, the tax imposed by the statute. However, counsel for the state directs our attention to section 7 of the act, which provides in part:

"If and whenever any of the articles taxed in this Act are found in the place of business of any retail dealer or any other person, firm, corporation or association of persons, except bonded interstate wholesale dealers, without the stamps affixed and cancelled as·herein provided, the prima facie presumption shall arise that such articles are kept therein in violation of the provisions of this Act."

■. It is obvious from the foregoing clause that, whenever any tobacco is found unstamped in the possession of any person in this state, such tobacco is subject to forfeiture, and the fact of the absence of the tax paid stamps, duly defaced and canceled, raises a presumption that the person, having control of said tobacco as owner or otherwise, keeps such merchandise in violation of the law, and this presumption may only be rebutted by the true and lawful owner or possessor upon producing satisfactory evidence that he was innocent of any intention to violate the statute.

The presumption thus created by the statute has not been rebutted by the appellant in this case. On the contrary, the circumstantial evidence warrants us in finding that the Gulf Coast Tobacco Company is not a reputable tobacco concern; that it conspired with divers persons, unknown to the State of Louisiana, to defeat and evade the payment of the tobacco tax, and that the goods were knowingly and fraudulently shipped into this state for that very purpose.

■■ But here, we need not discuss at length the culpability of the acts of the so-called Gulf Coast Tobacco Company because, at the outset, we are confronted with one of the primary points made by the counsel for the state, i. e., that the appellant has not proved ownership to the seized goods. The testimony of Yon, sole witness for the claimant, exhibits that the tobacco in question was sold by it to the unknown person and delivered to the railroad company. Under these circumstances, the Gulf Coast Tobacco Company lost title to the tobacco and at best could only assert a vendor's lien on it for the balance due to it by the vendor and cannot keep the person's money and also claim the goods. See Civil Code, art. 2456. It is true that the sale was consummated in Alabama, but in the absence of evidence to the contrary, the presumption is that the law of Alabama, respecting the sale of movables, is the same as the law of this state. 22 Corpus Juris, 151.

■ Moreover, it must be remembered that the claimant has failed to produce the bill of lading covering the merchandise shipped and in the absence of such production, he cannot claim ownership to the tobacco. Tennessee Egg Co. v. Monroe, 151 Tenn. 121, 268 S.W. 372; First Nat. Bank of Longview, Tex., v. Henderson Cotton Oil Co., 157 La. 394, 102 So. 501.

■ Finally, the claimant has set forth in its pleadings that the property was unlawfully seized by the Supervisor of Public Accounts because this was an interstate shipment. But the question of the validity of the seizure is not open to the claimant because it has not shown any right or title to the property. It is well established by all of the courts of this country, both state and federal, that one cannot complain of a seizure of property which he neither owns nor controls or in which he has no interest. See Corpus Juris, Vol. 56, pages 1174, 1175, and cases there cited.

■ Furthermore, the tobacco in suit was not seized while being transported in interstate commerce. The interstate shipment had come to an end. The property had come to rest within the state and was held at the warehouse of the carrier subject to the pleasure of the owner. See State of Minnesota v. Blasius, 290 U.S. 1, 54 S.Ct. 34, 37, 78 L.Ed. 131, where this principle is recognized and approved; and also Wiloil Corp. v. Pennsylvania, 294 U.S. 169, 55 S.Ct. 358, 79 L.Ed. 838.

There are other points of law raised by counsel for the state which are sufficient to maintain the dismissal of the intervention, but because of our holding, we find it unnecessary to discuss them.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

JANVIER, J., absent, takes no part.