(102 So. 815)

No. 24892.

**ALEMAN PLANTING & MFG. CO. v. HINES, Director General of Railroads.**

(Jan. 5, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Carriers** ⊚⇒56 — **Railroad could deal with indorsee of bills of lading as absolute owner of syrup, and notice to it was sufficient.**

Where shipper of syrup indorsed bills of lading therefor to consignee, legal title thereto was vested in indorsee, and railroad could deal with it, and no one else as absolute owner, and hence there was no occasion to notify shipper that syrup had not been removed.

2. **Estoppel** ⊚⇒75—**Ordinary rules of agency are inapplicable, where principal invests agent with all indicia of ownership.**

Ordinary rules of agency have no application, where principal invests agent with all indicia of ownership, and persons dealing in good faith with agent may treat him as absolute owner.

3. **Principal and agent** ⊚⇒181—**Mandate; fraud of agent to principal cannot affect third persons having no connection with agent as to perpetration of fraud.**

Fraud of agent cannot alter legal effect of his knowledge with respect to his principal in regard to third persons, who had no connection whatever with such agent in relation to perpetration of fraud, and no knowledge that it had been perpetrated.

4. **Trial** ⊚⇒398—**Allowing recovery for loss in gallonage, but denying recovery for damage to quality occurring under same circumstances, held error.**

Where a shipment of syrup was, after unloading, allowed to be exposed to the weather, whereby part was damages by fermentation, and there was also a loss in gallonage, it was error in a shipper's action to reject plaintiff's claim, based on the damage, and at the same time to allow recovery for loss in gallonage; the loss in gallonage and the loss in quality having occurred under the same circumstances.

5. **Carriers** ⊚⇒18(1)—**Reasonableness of storage charge is not question for courts; quantum being fixed by Railroad Commission.**

Reasonableness of charge for storage by railroad is not question for courts; quantum of charge having been fixed by tariff established by Railroad Commission.

Appeal from Civil District Court, Parish of Orleans; Val. J. Stentz, Judge.

Action by the Aleman Planting & Manufacturing Company against Walker D. Hines, Director General of Railroads. From a judgment for plaintiff for less than the amount sued for, plaintiff appeals. Reversed and rendered.

W. J. and H. W. Waguespack, of New Orleans, for appellant.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, for appellee.

ST. PAUL, J. Between January 16 and February 14, 1919, plaintiff shipped over the Texas & Pacific Railroad, then under the control of defendant, 12 car loads of cane syrup, aggregating 834 barrels, all of which arrived safely in New Orleans between January 31st and February 24th, and, on being gauged, were found to contain 44,746 gallons. The shipment moved on shippers' order bills of lading, "notify Heaslip Molasses & Sugar Company." The latter were duly notified of the arrival, and paid the freight at various dates from February 3d to March 1st.

The bills of lading were duly indorsed by the shipper, and attached to drafts on the Heaslip Company, which drafts were duly discounted by the shipper. The Heaslip Company, however, did not take up said drafts; the reason being that it had purchased said syrup only for resale, and its own purchaser, the American Molasses Company, had refused to accept the same on the ground that it was made of frosted cane.

On March 30th plaintiff's board of directors adopted the following resolution:

"Whereas, there is now on hand at New Orleans, La., 851 barrels of molasses; and whereas, there is no sale for molasses in bulk, and in order to make sales of said molasses, it is necessary to cause said molasses to be canned and sold under registered trade-mark, therefore:

"Be it resolved that H. R. Aleman, president, be and he is hereby authorized to release the bills of lading which now hold said molasses, and turn said molasses over to Heaslip Molasses & Sugar Company, to place said molasses in warehouse in order to have storage charges and deterioration on same stopped, and can, or cause to be canned, said molasses, and sell same · for account of Aleman Planting & Manufacturing Company, remitting for same as sold.

"He is further authorized to cause the name 'Cosa Natural Brand' to be copyrighted, and, to that end, he is authorized to employ said Heaslip Molasses & Sugar Company to have said trade-mark registered; it being understood that said trade-mark is to be registered without cost to this company, label and trademark to be submitted to this company and approved by it before being registered."

Whereupon the plaintiff, having made due arrangements with its bank as to its drafts, took the bills of lading out of the bank and delivered them to the Heaslip Company.

On May 17th defendant's proper representative wrote as follows to the Heaslip Company, who represented that they held, and did in fact hold, the bills of lading, and who, by the terms of said bills of lading, were the parties to be *notified:*

"Confirming phone conversation with your Mr. Perez this a. m., below find list of cars of molasses on hand at this station, showing date unloaded and number of barrels (to wit, 35 cars—including the 12 cars, 834 barrels, herein involved).

"As explained to Mr. Perez, under the provisions of general order 34–B we are authorized to dispose of any shipments that may remain on hand 60 days or over.

"Will you please arrange to have these shipments moved at once, as we dislike very much being obliged to comply strictly with the general order mentioned above.

"This is also to advise you that this railroad will not be responsible for any loss or damage caused by fermentation."

The Heaslip Company, did not, however, remove the shipment, but, on the contrary, persuaded defendant's representative to allow the syrup to remain undisturbed where it then was, and continued from time to time to renew their request to allow the shipment so to remain; the reason being that the Heaslip Company were unable to secure the site which they desired for the purpose of canning said syrup.

In the latter part of July the Heaslip Company went into the hands of a receiver.

On August 12th defendant's representative wrote plaintiff, as follows:

"The following cars molasses shipped by you consigned to shippers' order, notify Heaslip Molasses & Sugar Company, are on hand at this station undelivered, due to failure of Heaslip Molasses & Sugar Company to surrender bills of lading and take delivery (to wit, the 12 cars, 834 barrels, herein involved).

"Please be advised that, unless disposition is furnished immediately, we will be obliged to dispose of these shipments at public auction

to the highest bidder for account of whom it may concern in accordance with the provisions of the Director General's order No. 34–B.

"No doubt bills of lading are still in your possession, and, if so, will thank you to make arrangements through your New Orleans representative for the immediate removal of these shipments; otherwise we will be forced to take action as set forth above."

Whereupon plaintiff secured said bills of lading from the Heaslip Company, and after a short delay took charge, and disposed of the shipment.

### I.

When plaintiff took charge of its syrup, it found that defendant had unloaded said 834 barrels of syrup in an open yard uncovered and poorly drained. Thus exposed to the weather, rain, and sun, the syrup had fermented and soured, and the cooperage had been badly damaged. It was found necessary to transfer the syrup to new barrels, and, when regauged, the loss in gallonage was found to be 4,975 gallons, whilst the balance of 39,771 gallons had to be sold for 22 cents per gallon, instead of 66 cents, if made of good cane, and 55 cents, if made of frosted cane. The evidence shows it was made of frosted cane.

Plaintiff sues defendant for the loss so suffered, and in the alternative seeks to recover the storage charges by it paid to defendant, amounting to $3,283.50.

### II.

The evidence shows that the place where the syrup was stored was the usual place where, for about 15 years, syrup in barrels had been unloaded and temporarily held by the Texas & Pacific Company, without serious complaint on the part of any one, other than as to the difficulty of handling it during very wet weather. It further shows that during the cool months of the year, when the syrup and molasses are coming in, exposure to rain and sun do not injure the syrup it-

self, but only the cooperage; that it is only when the warm weather sets in that exposure to the weather affects the syrup itself. In the warm season, cold storage is the only storage which will prevent syrup from fermenting. Mr. Aleman, plaintiff's president, testifies:

"Q. Mr. Hollander (manager of the Heaslip Company) told you that he would can that molasses?

"A. Yes, sir, and store it; the board asked him to store it. * * *

"Q. What was Mr. Hollander to do with regard to the storage of the molasses?

"A. He was to put it in cold storage."

But Hollander did *not* put the molasses in cold storage or even remove it from where it was. On the contrary, he urgently besought and persuaded defendant's representative to leave it where it was, although he was fully aware of the conditions prevailing, and knew that the cooperage was deteriorating and the syrup fermenting rapidly.

### III.

Our conclusion is that up to March 30th, when Hollander was given the bills of lading and instructed by plaintiff to put the syrup in *cold storage*, and to can it and sell it for account of plaintiff, the syrup had been damaged to no appreciable extent, if at all, and that the whole damage suffered was due entirely to the failure of Hollander to carry out plaintiff's instructions.

Granting, then, that the place where the syrup was stored was not a proper place for the storage of syrup in warm summer months, the fact yet remains that the Heaslip Company chose that place to store it, with full knowledge of the conditions prevailing, and aware that the syrup was actually fermenting at the time.

### IV.

[1] We have already said that from March 30th the Heaslip Company held the indorsed bills of lading. That vested in them the legal title to the syrup, and the defend-

ant had a right to deal with them, *and with no one else*, as the absolute owners of the syrup. First National Bank v. Henderson Cotton Oil Co. (our No. 24840) ante, p. 394, 102 So. 501. Hence there was no occasion to notify any one (even the shipper) that the syrup had not been removed. An owner has the right to do as he pleases with his own.

[2] Plaintiff urges that the Heaslip Company was, in point of fact, not the *owner* of the syrup, but only the agent of plaintiff, who was the true owner thereof, and invokes a certain principle, to the effect that, under certain circumstances, notice to the agent is not notice to the principal, to which we shall revert again. But the ordinary rules of agency have no possible application, where the principal invests the agent with all the indicia of ownership, as (for instance) by putting him in possession of a negotiable instrument. In such cases the person dealing in good faith with the agent has a right to treat him as the absolute owner.

"Where the principal, not only intrusts to the agent the possession of the property, but also clothes him with apparent ownership or power of sale, then he will not be permitted to deny the agent's authority as against third persons, who have dealt with him in good faith and with reasonable prudence, unless the purchaser has notice of the lack of such authority." 2 Corpus Juris, 594, § 230.

[3] It is urged that notice to an agent is not notice to his principal, where the agent acts "not in execution of any duty owing his principal, nor of any authority possessed by him, but to subserve his own personal ends, or commit some fraud against his principal." American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977.

But aside from the fact that we do not see wherein the Heaslip Company was engaged in any fraud against plaintiff but merely *neglecting* its duty to them, and was in fact authorized to *store* the syrup (though not in the way it did), nevertheless, that principle is not applicable, where the party dealing with the agent is no party to the fraud practiced, and had no knowledge thereof. The fraud of an agent cannot alter the legal effect of his knowledge with respect to his principal in regard to third persons who had no connection whatever with such agent in relation to the perpetration of the fraud, and no knowledge that any such fraud had been perpetrated. Armstrong v. Ashley, 204 U. S. 272, 27 S. Ct. 270, 51 L. Ed. 482.

## V.

[4] The trial court rejected plaintiff's demand for the loss on the 39,771 gallons salvaged, but he did allow plaintiff 55 cents per gallon (as for syrup made of frosted cane) for the 4,975 gallons lost by leakage, etc. We are at a loss to understand how he made this difference, unless upon the hypothesis that this loss occurred in transit, i. e., between the loading of the syrup on board the cars and its arrival at destination; but this is admittedly not the case, as we have shown above. And since the loss in gallonage and the loss in quality occurred under precisely the same circumstances, we are constrained, in view of defendant's answer to the appeal, to reverse the judgment below, and reject plaintiff's demand in toto.

## VI.

[5] Nor can the alternative demand for storage charges be allowed. Had we to decide this upon the *value* of the storage furnished, we would hesitate to allow what defendant has received; but the reasonableness of the charge is not a question over which we have jurisdiction, the *quantum* of such charge being fixed by a tariff established by the Railroad (Public Service) Commission.

### Decree.

The judgment appealed from is therefore reversed, and it is now ordered that plaintiff's demand be rejected at its costs in both courts.