73 So.2d 9 (1954)
WINRU CHEMICAL & SALES CO.
v.
COLLIER.
No. 8164.
Court of Appeal of Louisiana, Second Circuit.
May 26, 1954.
*10 Edwin W. Edwards, Crowley, for appellant.
Peterman & Burden, Alexandria, for appellee.
HARDY, Judge.
This is a suit for the recovery of the sum of $1,901.25 alleged to be due by defendant for goods sold and delivered by plaintiff. After trial there was judgment in favor of plaintiff in the sum of $490.41, further recognizing plaintiff as entitled to the possession, as owner, of products in possession of defendant, reserving the right to recover the value thereof in the event of defendant's failure to surrender said property on demand. From this judgment plaintiff has appealed.
Plaintiff, a Missouri partnership, is a manufacturer of insecticides and rodent poisons. On or about December 31, 1951, defendant, who was engaged in the business of a merchandise broker in the City of Alexandria, was contacted by T. F. Winburn, one of the partners of plaintiff company, and after some preliminary negotiations it appears that defendant ordered a stock of plaintiff's products for resale to retailers in the Alexandria territory. The products, as itemized in a statement of account attached to plaintiff's petition, were shipped on March 7th and April 1, 1952, and were duly received and stored by defendant. There is no question as to the shipment and the receipt, nor as to the prices of the products, amounting to a total of $1,901.25, which is the sum sought to be recovered by plaintiff in this suit.
The defense is set forth in Article 8 of defendant's answer, which was filed in propria persona, reading as follows:
"Further answering Plaintiff's petition, your respondent admits receipt of merchandise from Plaintiff's company under a verbal contract with said company; that this merchandise would be paid for along with sale of same; that plaintiff through its agent was to furnish a complete line of merchandise in order that your respondant could have a sufficient volume of business to warrant the overhead cost of operating the business of distribution; that in violation of this agreement sufficient merchandise in the line was not shipped to respondant, as a result of which, he was unable to properly offer to the trade a general line of Plaintiff's products, all of which caused severe operating hardships and losses."
This defense was later amplified in supplemental answer coupled with a reconventional demand filed by counsel for defendant, specifically as follows:
"Petitioner shows that he had a verbal agreement with the plaintiff to send him certain goods, wares and merchandise, with the definite and specific understanding that these items were to be consigned to him and further that *11 he would be furnished with a complete line of the items in the quantities and amounts and of such a varied nature as to enable him to have a full and complete line of said merchandise; that despite this agreement on the part of the plaintiff, that only a limited amount of goods, wares and merchandise were sent him and the type of merchandise and kinds and quantities were not as they had been represented, nor was the line of merchandise complete enough for him to devote his full time to the sale thereof; that in addition, some of these consigned articles were infested with varmints and were not fit for sale to the public, and did not have any sale value, and your respondent so advised the plaintiff of the condition of the merchandise that he had received from them; that for the merchandise that has been sold, plaintiff stands ready and willing to pay a fair price to petitioner, and for the other merchandise, which was infested, and/or was on consignment, he owes no obligation to plaintiff; respondent further shows no invoice was sent with the merchandise and no price for same was agreed upon and the court should fix a fair market price for the goods that were sold, as will be shown on trial hereof.
"Respondent further shows that the merchandise which was sent and for which plaintiff is now claiming the sum of One Thousand Nine Hundred One and Twenty-five/100 ($1901.25) Dollars was not consigned to respondent in the ordinary course of business and does not constitute an open account as account stated; that said merchandise was sent pursuant to an agreement between petitioner and respondent to promote and establish a distribution line of plaintiff's products in Central Louisiana; that it was expressly agreed that part of the merchandise was to be given as `samples' in order to induce retailer to handle petitioner's products in competition with well advertised products of a similar type which already had been accepted by the public.
"Further answering, your respondent shows that at the time of the aforesaid agreement with petitioner's agent, T. L. Winburn, your respondent advised the said Winburn that he had no experience in handling chemical merchandise, and that the said Winburn promised to come to Louisiana shortly after the goods were received by respondent and give him the necessary training and assist him in establishing the route; that despite repeated requests by respondent, the defendant refused to comply with this agreement, and it was only after respondent advised petitioner that the merchandise was unfit for sale to the public and requested permission to return it, that petitioner sought to pervert a simple promotion agreement into a bogus open account transaction."
Before this court counsel for plaintiff urges error on the part of the district court in failing to give judgment for the full amount sought, and alternatively asserts, in any event, the right to a substantial increase in the amount of the judgment. As no answer to the appeal has been filed and defendant's reconventional demand has been specifically abandoned, the controversy is now limited to the fixing of the amount of recovery to which plaintiff is properly entitled.
The voluminous record, which consists almost entirely of the testimony of Winburn on behalf of plaintiff and Collier on behalf of defendant, indicates a violent and irreconcilable difference of opinion which gave rise to considerable personal feeling between the parties as evidenced in the course of trial.
Plaintiff's demands are resisted by the defendant on the following grounds:
1. That defendant's purchase of products from the plaintiff was intended as being on what is known as a sale or return basis.
*12 2. That plaintiff was obligated to deliver a complete stock of its products and to give defendant the benefit of expert advice, counsel and assistance in promoting the sale thereof.
3. That defendant is entitled to credit for the value of products distributed as free samples.
4. That further credit is due for the value of products allegedly deteriorated or spoiled.
It is obvious that the several elements of defense are predicated upon affirmative averments as a consequence of which defendant must bear the burden of proof in establishing the same. We proceed to a discussion of the above enumerated defenses, seriatim.
Repeated examination of the record before us fails to sustain defendant's contention that the sale of plaintiff's products was made on a "sale or return", or a "consignment" basis. Admittedly the goods were shipped by plaintiff and received by defendant, and there is no dispute as to the price. Correspondence between the parties gives no indication that defendant considered payment to have been contingent upon sales. Defendant made no effort to make payment of all or any amount of the invoice price of the goods, even for such portions as had been sold, until after rather stringent demands and an intention to sue had been communicated by plaintiff. Winburn's testimony is squarely in conflict with that of defendant and is to the effect that the sales to defendant were made in the ordinary course of business. It is well established that contracts of "sale or return" or "consignment" are dependent upon the intention of the parties and on the real nature of the transactions. 77 C.J.S., Sales, §§ 269, 270; C. V. Hill & Co. v. Interstate Electric Co. of Shreveport, Inc., La.App., 196 So. 396; William Frantz & Co. v. Fink, 125 La. 1013, 52 So. 131.
We not only conclude that defendant has failed to establish anything in the nature of a contingent sale and liability but, on the contrary, we think the established facts surrounding the transactions clearly indicate an outright sale on account.
Nor do we think defendant has succeeded in substantiating his claim that plaintiff was obligated to furnish a complete stock and give him the benefit of expert training and assistance in the disposition thereof. We think the testimony and such correspondence between the parties as is in evidence clearly shows that the expert advice, training and assistance to which defendant refers was limited to the development of the future expansion of defendant's business, particularly in connection with the operation of pest eradication services. There is not the slightest indication in the record as to why this expert assistance was necessary in connection with the sale of the insecticides and rodent poisons which constituted the nature of the products sold to and received by the defendant.
Defendant has completely failed to establish any agreement on the part of plaintiff with reference to the distribution of free samples out of the stock of merchandise which constitutes the basis for this suit. The testimony clearly shows that plaintiff did promise to furnish defendant with samples, which promise was made good by the shipment of some twenty cases of assorted products for which no charge was made. The only testimony in support of this position is by defendant himself, and its effect is completely unconvincing, for the real nature and necessity for his alleged distribution of samples is without the slightest certainty and comprehends only vague and general statements. The record contains a purported inventory as made by defendant on June 30, 1952, which carries an entry of "samples issued to date", listed by items and shown at a total value of something in excess of $500. The only amplification of this showing, as we have said, rests in the vague and uncertain testimony of defendant to the effect that he distributed large quantities of samples. There is *13 nothing in the record which would justify the conclusion that plaintiff had shipped any part of these products for sample purposes in addition to the already generous allowance of sample products.
The same general observation as above made with reference to the use of samples is appropriate to the defendant's claims of spoilage. In the first place there is nothing to indicate that the products were deteriorated in any degree at the time received. Second, there is the uncontradicted testimony of Winburn as to his examination, during the trial of this case, of certain of the products in the possession of a local dealer, which had been sold and delivered by defendant, and, according to the witness, had remained in good condition. Additionally it was established that defendant had stored the products in a building which did not provide adequate protection against deterioration. Certainly it is evident that any spoilage or deterioration was not chargeable to the fault of plaintiff.
Finally we come to a consideration of that portion of the judgment which recognizes plaintiff as being entitled to the possession of all of its products which remained in defendant's possession. We must confess we are at a loss to perceive any reason for this action in view of our conclusion that the sale was not made on the basis of an optional return. The only reference we find lies in the fact that in the effort to effect a settlement of its claim plaintiff did offer to accept the return of unsold merchandise in the possession of defendant and to give credit therefor. However, this offer was not accepted nor acted upon and, therefore, may not be considered in any sense as further binding upon the plaintiff.
Finally we are persuaded to the belief that the respective parties originally entered this transaction in mutual good faith. It is apparent, as indicated by his letters, that defendant was overly enthusiastic in his appraisal of the possibilities for the development of a market for plaintiff's products, and, unquestionably, he is chargeable with the unhappy effect of overstocking and underselling. Defendant's letters, prior to the time plaintiff's demands became pressing and culminated in suit, continued to be highly complimentary with reference to plaintiff's products and are replete with expressions of appreciation for plaintiff's assistance. Defendant's understanding of his unfortunate position is indicated in the following quotation from a letter of May 17, 1952:
"I now realize that I bit off a tough something when I tried to start on nothing, and naturally you have gone a long way toward helping, but the help is not what I need now."
For the reasons assigned the judgment appealed from is amended and reformed to read as follows:
It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Winru Chemical and Sales Company, and against defendant, J. L. Collier, in the full sum of $1,901.25, together with legal interest thereon from date of judicial demand, and for all costs, and, as thus amended, the judgment is affirmed at the cost of appellee.