92 So.2d 768 (1957)
H. E. HOLDER, Plaintiff-Appellee,
v.
William H. LOCKWOOD, d/b/a Star Cleaners, Defendant and Third Party Plaintiff-Appellant,
Equitable Fire & Marine Insurance Company, Third Party Defendant-Appellant.
No. 8609.
Court of Appeal of Louisiana, Second Circuit.
February 5, 1957.
Rehearing Denied March 13, 1957.
*770 Ferdinand A. Cashio, Shreveport, Morgan, Baker, Skeels, Middleton & Coleman, Shreveport, for appellant.
Love & Rigby, Shreveport, for appellee.
AYRES, Judge.
This action was instituted to recover the value of a suit of clothes deposited with the defendant for cleaning and pressing and allegedly not returned and for damages for inconvenience, embarrassment and humiliation caused by the non-delivery of said suit.
The defendant, Lockwood, is the owner of and operates a dry cleaning establishment in the City of Shreveport known as Star Cleaners. The defendant caused the Equitable Fire & Marine Insurance Company to be impleaded as a third-party defendant because, on the date of the alleged loss, the Insurance Company had issued to defendant, and there was on said date in full force and effect, a bailees' customer's policy of insurance, which defendant alleged protected him against the loss claimed by plaintiff.
The defendant admitted the receipt of plaintiff's suit for the purposes alleged, as well as its value, but otherwise denied generally the allegations of plaintiff's petition. The third party defendant filed and urged an exception of no cause or right of action for the alleged reason that the policy of insurance did not afford protection or coverage for the loss purportedly sustained by plaintiff. The exception was referred to the merits and eventually overruled.
After trial on the merits, plaintiff was awarded judgment for the value of the suit of clothes against the defendant, Lockwood, who, in turn, was granted a like judgment in his favor against his insurer. From the judgment, both defendants appealed. Plaintiff neither appealed nor answered the appeals.
When clothes are deposited by a customer with a dry cleaning establishment to be dry cleaned, the relationship created between the parties is a bailment for hire. That such is the relationship is not only admitted by all parties to this litigation but is firmly established in the jurisprudence of this State. LSA-C.C. Art. 2929; Livaudais v. Lee She Tung, 197 La. 844, 2 So. 2d 232; Paterno v. Kennedy The Cleaner, Inc., 18 La.App. 649, 138 So. 531; Grush v. Boudreaux, La.App., 67 So.2d 752; Yarborough v. Bogalusa Steam Laundry, Inc., La.App., 74 So.2d 344.
The degree of care required of a bailee for hire or of a depositary is regulated by LSA-C.C. Art. 2937, providing:
"The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property."
In accord with this Codal provision, there is a general rule also well established in our jurisprudence that, where the relation of bailor and bailee for hire or mutual benefits exists, the bailee is under an obligation to use ordinary care and diligence in safeguarding the bailor's property, and he is answerable for such loss or injury thereto resulting from failure to exercise such care. Livaudais v. Lee She Tung, supra, and the numerous authorities therein cited; Leigh v. Johnson-Evans Motors, Inc., La.App., 75 So.2d 710; Grush v. Boudreaux, supra; Paterno v. Kennedy The Cleaner, Inc., supra.
The bailee is not only answerable for his own failure to exercise ordinary and prudent care but for the failure of those for whose acts he is responsible. For instance, it was stated in Paterno v. Kennedy *771 The Cleaner, Inc., supra [18 La.App. 649, 138 So. 532]:
"Authorities are hardly necessary to show that a bailee is liable for loss caused by the negligence of his servants while acting within the scope of their respective employments, for, under articles 176, 2317, and 2320 of the Civil Code of Louisiana, we are made responsible for the acts of our servants and others acting as our agents or employees, and if, then, a bailee is responsible for his own negligence, he is likewise responsible for the negligence of those employed by him to carry out the purposes for which the bailment was undertaken."
The law is well settled, however, that in the absence of a specific contract, a bailee for hire is not an insurer but is charged only with the duty of exercising ordinary care in safeguarding the bailor's property. Grush v. Boudreaux, supra.
"Ordinary care" is defined in 6 Am.Jur. § 249, page 354:
"As applied to bailments, ordinary care means such care as ordinarily prudent men, as a class, would exercise in caring for their own property under like circumstances, or, as it has been sometimes expressed, when applied to such bailees as make a business in keeping or transmitting property for hire, that degree of care and diligence which may reasonably be expected from ordinarily prudent persons under similar circumstances, or that which capable and reasonably prudent persons engaged in the same business, and experienced and faithful in the particular department, are accustomed to exercise when in the discharge of their duties."
The burden is upon the bailee or depositary, when the customer proves the deposit, to prove his freedom from negligence or that he used due care. For instance, it was held in Alex W. Rothschild & Co., Inc., v. Lynch, 157 La. 849, 103 So. 188, 189, that where chattels delivered to a bailee are lost or can not be returned at all, the law presumes negligence to be the cause and casts upon the bailee the burden of showing that the loss is due to other causes consistent with due care on his part. The court stated:
"The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property. Civ.Code, art. 2937. And, where he is unable to explain the disappearance of the deposit or to show his own freedom from negligence, he is liable. Nicholls v. Roland, 11 Mart. (O.S.) 190; Short v. Lapeyreuse, 24 La.Ann. 45."
This burden of proof on the part of defendant cleaner to exculpate himself from the presumption of negligence arising out of his inability to produce the goods deposited with him has been recognized in several cases, among which is Gugert v. New Orleans Independent Laundries, Inc., La.App., 181 So. 653, 655, wherein it was held:
"Since the defendant admits that the draperies were damaged while in its custody, the burden of proof was upon it to show that it was free from fault."
This situation is analogous to the application of the doctrine of res ipsa loquitur. In Pacific Fire Ins. Co. v. Eunice Motor Car Co., Inc., La.App., 47 So.2d 403, 404, a suit for damages to a vehicle, which was the object of the bailment, the court, citing Davis v. Teche Lines, 200 La. 1, 7 So.2d 365, 367, held that where this doctrine was applicable and specific acts of negligence are also proven, the defendant would be required not only to rebut the inference of negligence arising from the rule but to show that he was not guilty of the specific acts of negligence.
This court likewise held in Leigh v. Johnson-Evans Motors, Inc., supra, that *772 the doctrine of res ipsa loquitur was applicable in an action involving a bailor-bailee relationship and that the burden was upon the bailee to establish that the damage or loss did not result from his negligence but that it used due care.
The question is, therefore, whether the evidence submitted by the defendant, Lockwood, is sufficient to establish his freedom from fault or that he used due care. Defendant Lockwood is the only witness testifying in his behalf, notwithstanding that he had two or three employees who were solely in charge during defendant's absence from his establishment from about 9:30 until after noon each day. He apparently made no effort to procure the testimony of these employees, or former employees, either by requiring their appearance in court personally or by deposition.
Defendant's practice and custom in handling customers' clothing does not support his contention he exercised due care but evidence a lack of due care. On receipt of a customer's clothing for cleaning and pressing, the items were listed on a ticket with the customer's name, and, after the clothes were processed, the ticket was attached to the clothes for their identification. However, it was his custom and practice to deliver those clothes to whoever called for them without requiring any identification whatsoever and without ascertaining the party had authority to receive the merchandise. His duty was to safeguard his customers' clothing with the same care and regard that he would protect his own. Assuredly, had some one called for defendant's own clothes in defendant's name, the defendant would have made inquiries as to the reason for which the clothes were sought.
Defendant attempts to excuse his action by claiming that it is not good business practice to require identification of a person who calls for clothes to be delivered that such practice would drive away customers who would be offendedand that it is not the practice of the trade generally to require identification. With this contention we find ourselves in disagreement. In the first place, it would appear that customers would prefer, for their own protection against loss, that some form of identification or restrictions be required before delivery was effected. Moreover, defendant admits there are systems used by the trade generally to avoid erroneous delivery of a customer's clothes, which, admittedly, require some effort and consume some time. Seemingly, defendant preferred to run the risk of an erroneous delivery rather than place in effect a system of identification of customers whom neither he nor his employees personally knew.
From our appreciation of the record, the conclusion is inescapable that the manner of defendant's operations was conducive to errors such as may have occurred in this case, which we are unable to reconcile with due care. He has not, in our opinion, discharged his burden and established his freedom from fault or used due care in safeguarding his customer's clothes. He should, therefore, respond to plaintiff for the loss sustained.
The defense urged by the third-party defendant, Lockwood's insurer, is that the policy of insurance does not extend coverage to plaintiff's loss. The policy affords protection on all kinds of lawful goods and/or articles accepted by the assured for cleaning, renovating, pressing, or dyeing, the property of the assured's customers, while contained in the premises occupied by the assured, against direct loss of, or damage to, the insured property produced by certain enumerated perils, including theft, burglary and holdup, except as thereinafter excluded, which exclusion eliminates theft by, or infidelity of, any person in the service or employment of the assured, whether or not occurring during the hours of service or employment.
*773 Admittedly, there is no positive or direct evidence as to what actually happened to the clothes or that they were stolen. Circumstantial evidence, however, is significant in that regard. This evidence establishes, as defendant admits, that the clothes were actually received by defendant for cleaning and pressing; that the usual tickets were made in plaintiff's name; that after the clothes were processed and returned for delivery, the tickets were attached to the clothes; that the charge for the services was paid, the tickets detached from the clothes and placed with other tickets representing the charges for other clothes, deliveries of which had been made. From defendant's manner of operation, it is reasonable to conclude, as did the defendant himself, that plaintiff's clothes were delivered to some one either posing as plaintiff or calling for the suit in plaintiff's name and paying the charges, as is evidenced by defendant's records.
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential. LSA-R.S. 14:67. Whoever obtained plaintiff's suit from defendant's establishment committed theft, and should the clothes be found in the possession or custody of a person who is unable to explain his possession, the presumption is that he is the thief. LSA-R.S. 15:432. In civil matters, as distinguished from criminal matters, there is no requirement that circumstantial evidence must exclude every other hypothesis, but the rule prevails that proof is only required to a legal certainty and by a preponderance of the evidence. The evidence, in our opinion, sufficiently establishes that plaintiff's suit was stolen.
But the third-party defendant reasons that if a theft were committed, it may have been committed by one of defendant's employees and in that event the wrongful act is specifically excluded by the policy from coverage; or, that while the asportation or taking of the suit may have been on defendant's premises, the party to whom it may have been only erroneously delivered may not have formed the intention to commit theft of the property until some later time and at some place elsewhere, which conditions, it is contended, would make the wrongful act come within another exclusion of the policy. The answer to these contentions is that they constitute matters of defense, and whenever the loss has been shown to come under one of the perils insured against, as has been established here, the burden is then upon the third-party defendant to establish its affirmative defense, that is, that the act complained of came under the exceptions or exclusions, and that it is relieved from the obligation. LSA-C.C. Art. 2232; Clarke Garage Co., Inc., v. Rosenberg, 13 La.App. 374, 128 So. 62; Guillory v. Meyers, La.App., 149 So. 260; Winru Chemical & Sales Co. v. Collier, La.App., 73 So.2d 9.
No other conclusion could be reached from the facts established in this record but that defendant has not sustained this burden of proof. Third-party plaintiff has established, at least, a prima facie case, that is, that the loss occurred under the coverage afforded by the policy. The third-party defendant has failed to sustain its burden and to overcome this prima facie case. No evidence was offered by that defendant that would support its position. The insurer should, therefore, under the terms of its policy, respond to the insured, third-party plaintiff, for the amount in which he is condemned. We note, however, that the judgment rendered fails this in one respect. Third-party defendant was not condemned for costs as were assessed against the principal defendant. The judgment will, accordingly, be amended.
*774 For the reasons herein assigned, the judgment appealed is amended by condemning the third-party defendant, Equitable Fire & Marine Insurance Company, to pay to the defendant, William H. Lockwood, doing business as Star Cleaners, all costs incurred in the trial court, as well as the costs of the appeal, and, as thus amended, the judgment appealed is affirmed.
Amended and affirmed.