FRUGÉ, Judge.
This is an appeal by the plaintiff, defendant in reconvention,- from a ruling denying its exception of res judicata and from a judgment on the merits granting defendant, plaintiff in reconvention, a $9,185.22 reduction in the price of stock in the defendant Corporation. The trial court awarded plaintiff $3400.00 plus 15 percent attorney’s fees on a promissory note which plaintiff sought to collect. Defendant, plaintiff in reconvention, answered the appeal requesting that attorney’s fees on the promissory note be disallowed and that the amount awarded the Corporation be increased.
On September 25, 1964, Douglas J. Talbot and Frank Oldham, Jr. entered into an agreement whereby Talbot, sole owner of the 1,002 shares of stock of the defendant corporation, was to transfer 100 shares of such stock to Oldham and the remaining 902 shares were to be sold back to the Corporation making it treasury stock. This in effect made Oldham the sole owner of the Corporation.
The Corporation gave Talbot three vehicles in payment for 112 of the 902 shares of stock. The remaining 790 shares were sold for $26,700.00 provided the cash on hand and the accounts receivable amounted to $23,229.00 and the accounts payable amounted to $16,800.00. Any variation from these two figures was to increase or decrease the purchase price a like amount. The $26,700.00 was placed in *223 escrow until the above figures could be ascertained. An audit showed that the cash on hand and accounts receivable actually amounted to $31,909.06 ($8,680.06 more than' the stated figure) and the accounts payable were $28,541.58 ($11,741.58 above the stated figure) resulting in a net decrease of $3,061.52 in the purchase price making it $23,638.48.
On December 18, 1964, Talbot was paid the $23,638.48 less $6,698.35 representing accounts receivable that had not been collected during the ninety-day audit period. These uncollected receivables became Talbot’s property. This should have been the end of the transaction.
However, between December 18, 1964 and May 28, 1965, there was still some confusion as to how much Talbot was entitled to on the contract. The problem primarily concerned these accounts receivable which belonged to Talbot but were collected by the Corporation, and some accounting bills and highway taxes which Talbot was to have paid. On May 28, 1965 the parties entered into a compromise agreement that was to “fully and finally settle and complete all of their differences, rights and obligations resulting from the contract of September 25, 1964.”[1] The parties agreed that the Corporation owed Talbot $4,200.00. He was given $800.00 in cash and the Corporation’s note for $3,400.00 due on or before October 1, 1965.
The Corporation refused to pay the note and the plaintiff filed suit to collect it. The Corporation reconvened against Talbot alleging that there were outstanding claims against the Corporation for damage to items handled by it prior to the sale of September 25, 1964 and that Talbot had assured Oldham that these claims could be taken care of with about $1,000.00, when in fact they amounted to more than $30,-000.00. Talbot filed an exception of res judicata, based on the compromise of May 28, 1965. The exception was denied and after a trial on the merits the Corporation was awarded a judgment of $9,185.22 less credit for the $3,400.00 note and 15 percent attorney’s fees.
The record shows that Oldham took over the Corporation on September 25, 1964. He retained most of Talbot’s employees including Roland Metre jean who had managed the Corporation for Talbot. Metre-jean had been on friendly terms with Old-ham before he bought the Corporation, but he was also Talbot’s brother-in-law. Defendant alleges that Metrejean did not tell Oldham about the damage claims that had been filed and that he made some effort to conceal these claims from the auditor. Talbot’s contentions are that they *224 are primarily old claims going back as far as 1959, many of which have prescribed and the vast majority of which would never have to be paid. These types of claims are routinely filed and mostly ignored until they just “go away”. They are then placed in a “dead” file and more or less forgotten. On all claims Talbot paid an average of approximately $2,000.00 per year for the three years previous to selling the business. Talbot estimated that only half of these payments were related to the storage business. Nevertheless the Corporation has paid out some $5,141.78 (all allegedly related to the storage business while Talbot owned it) since Oldham took over the business. Talbot contends that many of the claims did not have to be paid and that there was no way of accurately computing how many and how much of the claims would have to be paid. The Corporation contends that most of the claims are government claims and if they are not handled satisfactorily the government will quit doing business with it.
The compromise agreement of May 28, 1965 was entered into more than eight months after Oldham had taken over the Corporation. During this period Roland Metrejean managed the Corporation for Oldham. Oldham, as had Talbot before him, took little or no part in running the Corporation.
The Corporation wishes to have the compromise agreement declared a nullity because it entered into the agreement through error which is grounds for rescission by virtue of La.Civ.Code art. 3079. That article says “A transaction may be rescinded notwithstanding, whenever there exists an error in the person or on the matter in dispute. It may likewise be rescinded in the cases where there exists fraud or violence”. The error complained of here is that the Corporation did not know of the outstanding claims against it.
Oldham had control of the Corporation and its employees for more than eight months prior to the compromise agreement. He had ample opportunity to investigate and ascertain the amount of outstanding claims against the Corporation and furthermore at least one of the officers of the Corporation knew about the claims. Also Oldham learned from the Department of Defense late in 1964 that there were thirty to forty claims pending against the Corporation. (Tr. 332). “Where a party to the settlement has the means in hand of ascertaining the facts, but neglects to avail himself thereof, he cannot thereafter have the settlement set aside because of mistake. A fair compromise will be sustained by the courts, notwithstanding errors of law or mistake of facts of which the party complaining could by reasonable diligence have informed himself, especially where the means of knowledge as to the fact in controversy is equally accessible to each party, or the failure to discover the mistake was due to complainant’s gross negligence.” 15A C.J.S. Compromise and Settlement § 36, p. 260. If he was unaware of these claims he failed to show that it was due to Talbot’s misleading him rather than his own carelessness and neglect in handling the affairs of the Corporation.
The defendant Corporation, plaintiff in reconvention, chose to rely on error of fact to invalidate the compromise which made it necessary to prove that its agent was acting adversely to it and that the plaintiff knew this. It failed to show that Metrejean had any interest in concealing the old claims or that he and Talbot were acting in concert in order to deceive it. Assuming that an agent is acting fraudulently and adversely to his principal, such fraud will not alter the legal effect of his knowledge on the principal with regard to a third person unless the third person was connected with or had knowledge of the fraud. Aleman Planting & Mfg. Co. v. Hines, 157 La. 625, 102 So. 815 (1925).
The terms of the compromise agreement, which was entered into at the suggestion of the defendant Corporation, and drawn by its attorney in his office, are clear and unmistakable. It was intended to settle the parties’ differences concerning the con *225 tract of September 25, 1964 once and for all. The parties were dealing at arms’ length and on an equal footing. That agreement governs the legal relationship of the parties growing out of the' contract of September, 1964, in the absence of error or fraud, neither of which was adequately proven.
Accordingly the trial court’s denial of defendant in reconvention’s exception of res judicata is hereby reversed. The judgment on the merits granting plaintiff $3,400.00 plus 15 percent attorney fees on the promissory note is affirmed at the cost of defendant, plaintiff in reconvention.
Affirmed in part, reversed in part.

. The full text of the compromise agreement is ns follows:
“DOUGLAS J. TALBOT, FRANK OLDHAM, JR., and DOUGLAS MOVING & WAREHOUSE COMPANY, INC. agree as follows:
“On September 25, 1964, the parties entered into a contract before Alfred A. Mansour, Notary Public, relative to the sale of stock of Douglas Moving & Warehouse Company, Inc. from Douglas J. Talbot to Frank Oldham, Jr., and reference is made to that contract for the terms and conditions thereof. The parties now agree that the balance due Douglas J. Talbot under the contract is Four Thousand Two Hundred and 00/100 ($4,200.00) Dollars, of which amount Douglas Bloving & Warehouse Company, Ine. has paid Douglas J. Talbot Eight Hundred and 00/100 ($800.00) Dollars cash and has given him its promissory note for Three Thousand Four Hundred and 00/100 ($3,400.00) Dollars, due on or before October 1, 1965. The corporation assumes all of the debts and obligations of the corporation which existed at the time of the contract of September 25, 1964, and Douglas J. Talbot disclaims any right, title or interest in and to the accounts receivable of the corporation.
“The parties agree that other than the amount now due on the $3,400 note, neither party has any further claims against the other, nor does Douglas J. Talbot have any further claims against Douglas Bloving & Warehouse Company, Inc., and that they do hereby fully and finally settle and complete all of their differences, rights and obligations resulting from the contract of September 25, 1964.”